## HARRINGTON *v.* WHITE.

## Opinion delivered November 5, 1917.

1. STOCK LAWS—RESTRAINING STOCK FROM RUNNING AT LARGE.—The Act of 1915, p. 676, providing for an election, following a petition to restrain stock from running at large, held not invalid as an attempted delegation of legislative authority.

2. STATUTES—VALIDITY OF PASSAGE.—Where an act of the Legislature is signed by the Governor and deposited with the Secretary of State, a presumption is raised that every requirement necessary to its passage has been complied with, unless the contrary permanently appears from the records of the General Assembly. An apparent conflict between the journals of the two houses which arises merely from the silence of the Senate journals as to the exemption of certain counties from the operation of the act, will be treated as a clerical misprison.

3. STATUTES—VALIDITY OF PASSAGE.—The rule announced in 2, above, is limited to those things which the Constitution does not require that the journals of the respective Houses of the General Assembly shall show; the rule does apply where there is no constitutional requirement that the journals shall recite the substance or contents of an amendment.

4. STATUTES—REFERENCE TO OTHER ACTS—CONSTITUTIONAL LIMITATION.—Where a statute by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right, or discharging the burden.

5. STOCK LAWS—PUBLICATION OF NOTICE.—*Held*, the publication of the notice required by Act of 1915, p. 676, to have been legally complied with.

6. STOCK LAWS—ELECTION—WHO MAY VOTE.—Under Act of 1915, p. 676, the qualified electors in the townships in certain counties may sign the petition and vote at the election to determine the restriction of the running of stock at large, and *held*, under the act, residents of towns in the townships may sign the petition and vote at the election.

Appeal from Columbia Chancery Court; *James M. Barker,* Chancellor; reversed.

1.   The act is not a delegation of legislative authority.   35 Ark. 70; 37 *Id.* 374; 141 Ala. 84; 11 Ariz. 430;

46 Cal. 240; 42 Conn. 364; 62 Fla. 211; 234 Ill. 146; 109 Me. 48; 200 Mass. 152; 51 U. S. (L. Ed.) 523; 35 *Id.* 294, and many others.

2. The last sentence in section 4 is not in conflict with section 23, Art. V, Const. 102 Ark. 411; 121 Fed. 283.

3. Section 1 is not void for ambiguity. 91 Ark. 5.

4. The bill properly passed the Legislature. 40 Ark. 215; 61 *Id.* 226, 238; 90 *Id.* 600, 603; 110 *Id.* 269; 90 *Id.* 174.

5. Notice of the result of the election was sufficient. 77 Ark. 161, 166; 39 Am. & E. Ann. Cases 707-8; 53 Am. Dec. 69; 50 Ark. 266; 9 R. C. L. 992.

6. Citizens of cities and towns were not disqualified to sign the petition. 63 S. W. 884; 3 C. J. 175.

*Stevens & Stevens,* for appellees.

1. The act is void as it delegates legislative authority. 51 U. S. (L. Ed.) 523; 35 Ark. 69; 37 *Id.* 374, 382; 91 S. W. 298; 104 Ark. 595; 110 *Id.* 534

2. Section 4 extends the estray law by reference to its title only. 49 Ark. 131-3-5; 52 *Id.* 294-6; 6 So. 119; 11 *Id.* 414.

3. The act never passed the Legislature. 40 Ark. 200; 72 *Id.* 565; 41 *Id.* 471; 40 L. R. A. 200; 38 *Id.* 74.

4. The act is vague, indefinite and uncertain. It is contradictory. 44 Cent. Dig. 2837; 64 N. W. 365; 66 *Id.* 658; 37 N. J. L. 228; 19 Vt. 129; 59 N Y. 53.

5. The proper notice was not given. 116 Ark. 291; 74 S. W. 773; 105 *Id.* 539.

6. Citizens of cities and towns had no right to sign the petition or vote. 110 Ark. 532; 104 *Id.* 583; Black on Int. Laws (2 Ed.), § 105, p. 345, 331-2-3.

7. "Township" means political township. 54 Mich. 641; 40 N. J. 302; 29 Ark. 354.

McCULLOCH, C. J. This appeal brings in review a special statute enacted by the General Assembly of 1915 (Acts of 1915, page 676), for the creation of dis-

tricts wherein live stock is to be prevented from running at large, and appellees, who were plaintiffs below, attack the validity of the statute and the proceedings pursuant thereto organizing a district. The statute provides in substance that whenever twenty-five per cent of the voters of any three or more townships situated in a body in any county shall petition for an election on the question of restraining horses, mules, cattle, swine, etc., from running at large, the county court shall make an order for such an election in those townships; that if the vote of a majority at the election shall be in favor of enforcing the law restraining the running at large of animals in the given territory, the clerk of the county court shall enter the result of the election upon the records of said court and give notice of the result, and that six months thereafter it shall be unlawful for the owners of such animals to permit the same to run at large in the territory. The statute provides that it shall be lawful for any person to take up stock found running at large inside of the prohibited territory, and to keep the same until compensation be paid, and that notice of the taking up of the stock be given if the owner be known, otherwise, that such animal "shall be deemed to be strays and shall be dealt with as required by law with respect to taking up such property as strays, under the estray law of this State." The statute further provides for an appraisement to ascertain the compensation for the keep of the animals while restrained and for the damages caused by depredation of animals while at large.

The particular district now under review was formed in Columbia County, and is composed of the townships of McNeill, Magnolia and Buena Vista, which lie in a body. Appellees instituted this action in the chancery court of Columbia County to enjoin appellants from taking up stock running at large in the townships mentioned. The chancery court held that the statute and the proceedings thereunder were void and rendered a decree granting the relief prayed for, enjoining appellants from

taking up stock pursuant to the terms of the statute. No question is raised as to the right of appellees to relief in equity instead of resorting to an action at law for damages, so we will not discuss that question, but will proceed, in response to the argument of counsel, to determine the questions they present concerning the validity of the statute and the proceedings thereunder.

(1) It is insisted, in the first place, that the statute is void because it is an attempt to delegate legislative authority. It seems plain to us, however, that the statute is not a delegation of legislative authority, but comes within the rule that the Legislature may "make a law to delegate the power to determine some facts or state of things, upon which the law makes or intends to make its own action depend." *Boyd* v. *Bryant,* 35 Ark. 69; *Nall* v. *Kelley,* 120 Ark. 277. In each of the cases cited we approved the rule announced by the Supreme Court of Ohio in *Cincinnati, etc., Rd. Co.* v. *Commissioners,* 1 Ohio State 77, as follows: "The true distinction is between the delegation of power to make the law, which necessarily involves the discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law. The first can not be done. To the latter no valid objection can be made." Applying that test to the case in hand, it is plain that the statute does not amount to a delegation of the legislative power, but on the other hand the Legislature exercised its power by declaring what the law shall be when put into operation in a given locality by ascertainment of certain facts, *i. e.,* the will of the majority in the given locality to be affected.

(2-3) It is next contended that the statute was never legally passed by the General Assembly for the reason, it is argued, that certain amendments adopted by the House were not, according to the records, adopted by the Senate. The history of the passage of the bill, as reflected by the records in the office of the Secretary of State, is as follows: It originated as a House bill

and after amendments were adopted in the House exempting eight counties named therein from its operation it was duly passed by that body and sent to the Senate for consideration. The journals of the Senate recite that the bill was amended by adding to the exemption clause the counties of Monroe, St. Francis, Arkansas and Crittenden, and that the bill as amended was duly passed and returned to the House. The journals of the House recite an amendment by the Senate adding the counties of Monroe, St. Francis, Arkansas, Crittenden, Drew, Desha, Bradley and Union to section 11 of the bill, which is the section exempting certain counties from the operation of the statute. The journals also show that the amendment was concurred in by the House and engrossed into the bill, and that the bill as thus amended was finally voted on and passed. The enrolled bill which was signed by the Governor and filed in the office of the Secretary of State, includes the last four mentioned counties as being exempted. The original bill has been lost. Two of the counties originally put into the exemption clause by the House appear in pencil in the engrossed bill. The state of the record concerning the passage of the bill, therefore, is that the enrolled bill as signed by the Governor is complete on its face, and is in accordance with the recitals of the House journal, but the Senate journals fail to recite that the counties of Drew, Desha, Bradley and Union were included in the amendment adopted by that branch of the General Assembly. The question presented, therefore, is whether the omission of those counties from the recital of the journal of the Senate is sufficient to raise the presumption that they were not included in the amendment acted upon by the Senate, or whether the presumption in favor of the regularity arising from the face of the enrolled bill as signed by the Governor should prevail, notwithstanding the silence of the Senate journals on the subject of including those four counties in the exemption clause. An act of the Legislature signed by the Governor and deposited with

the Secretary of State raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the record of the General Assembly, and we think that the mere silence of the journals of the Senate as to the inclusion of certain counties in the amendment to the exemption clause is not sufficient to overcome the presumption of regularity. *Chicot County* v. *Davies,* 40 Ark. 200; *State* v. *Corbett,* 61 Ark. 226; *State* v. *Bowman,* 90 Ark. 174; *The Mechanics Building & Loan Association* v. *Coffman,* 110 Ark. 269. The application of this rule is, of course, limited to those things which the Constitution does not require that the journals of the respective Houses of the General Assembly shall show. The rule does apply, however, to a case like this where there is no constitutional requirement that the journals shall recite the substance or contents of an amendment. There is an apparent conflict between the journals of the two Houses which arises merely from the silence of the Senate journals concerning the four counties named, and this should be treated as a clerical misprision rather than to establish the falsity of the recitals in the House journals which support the authenticity of the bill as enrolled and signed by the Governor.

(4) The next ground for assault upon the validity of the statute is that the concluding sentence of section 4 constitutes an attempt to extend the operation of another statute by reference only to its title in violation of that clause of the Constitution which provides that the provisions of no law shall be extended by reference to its title only, but that "so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." Constitution, Art. V; Sec. 23. Section 4 of the statute provides unqualifiedly that when its terms shall have been adopted in a given territory, after six months "it shall be unlawful for the owner or keeper of any of the animals named in the petition, that has been submitted and adopted, to permit the same to

run at large outside the enclosures of the owner or keeper; and if any of the animals aforesaid be found running at large outside of the enclosure of the owner, it shall be lawful for any person to restrain the same forthwith,'' and that after notice being given, the owner ''shall pay the person taking such animal or animals a reasonable compensation for taking up, keeping and feeding such animals running at large, (and) the actual damages sustained by him or them.'' The last sentence of section 4 is as follows: ''If the owner or keeper of such stock be not known, or if notified, and fail to make compensation for the taking up, feeding and keeping of animals taken up under the provisions of this act, the same shall be deemed to be strays and shall be dealt with as required by law with respect to taking up such property as strays, under the estray law of this State.'' The contention is that the reference to the estray laws of the State constitutes an extension of that part of those laws, and that this conflicts with the Constitution. We have steadily adhered to the rule that where a statute ''by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some other existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right, or discharging the burden.'' *Watkins* v. *Eureka Springs,* 49 Ark. 131; *Common School District No.* 13 v. *Oak Grove Special School District,* 102 Ark. 411; *State* v. *McKinley,* 120 Ark. 165. An analysis of the statute before us shows that there is distinctly imposed upon the owners of stock the burden of not permitting the same to run at large in the territory coming within the operation of the statute, and also the right of any person to take up stock unlawfully running at large and to hold the same until compensation for the expense of keep and the damage resulting from the depredation of the stock shall be paid. The remainder of the statute merely refers to the method of enforcing those burdens

and rights and the reference is, therefore, merely to the matter of procedure in the enforcement thereof. We do not think that this particular statute is objectionable as an improper extension of the terms of another statute merely by reference to title.

It is argued that the act is too vague and uncertain in its meaning to be enforceable, and for that reason is void; but we do not discover any such uncertainty as would make it impossible to determine, by proper construction, the real meaning of the law makers. This case does not call for an interpretation of the statute concerning other matters mentioned in the argument, and, therefore, we refrain from doing so.

(5) The statute provides that if a majority of the legal voters be in favor of the adoption of the law in a given locality the clerk of the county court shall enter the result upon the records and "shall immediately give notice of the results of said election by publishing the same in a weekly newspaper published in said county, and by causing notice thereof to be posted in at least three public places in each township in said county." The facts, as agreed upon by the attorneys in the case, are that the clerk gave notice by publication in a newspaper and by posting notices in three public places in each of the townships composing the district, but it does not appear from the agreement of facts that the notice was posted in other townships of the county. It is argued by counsel for appellants that the statute does not require the posting of notices in each township in the county, but only in the townships embraced in the prohibited territory. We think counsel are in error in their interpretation of the statute, for it says that the notice shall be posted "in each township in said county." We are of the opinion, though, that the statute with respect to the notice is merely directory and that substantial compliance with its terms is sufficient. While the direction is to publish the notice in two methods, the publication thereof by one of the methods prescribed is suffi-

cient. *Harper* v. *Smith,* 89 Ark. 284. The agreed statement of facts recites that the notice was given by publication in a newspaper and by posting in the three townships affected, which constitutes substantial compliance with the statute. It will be observed that section 4, which declares when the provisions of the statute shall go into effect, says that it shall become effective six weeks after "the provisions of this act shall have been adopted as herein prescribed." The adoption there referred to is the approval by a majority vote of the qualified electors, and not the publication which constitutes no part of the adoption of the act, and for that reason substantial compliance with its terms with respect to the notice is sufficient.

(6) There is one other question raised, and that is that electors residing in the cities and incorporated towns have no right to sign a petition or vote at the election, it being the purpose of the statute to limit this right to residents of the rural districts. This view is not in conformity with the statute, which provides that the qualified electors in the townships may sign the petition and vote at the election, and, of course, the residents of the towns in the territory named are also residents of the township in which those towns are situated.

The decree of the chancery court was, therefore, erroneous, and the same is reversed and the cause remanded with directions to dismiss the complaint for want of equity.