TEXARKANA-FOREST PARK PAVING, WATER, SEWER AND GAS DISTRICT No. 1 v. STATE USE MILLER COUNTY.

4-3517

Opinion delivered June 11, 1934.

618

*L. P. Biggs,* for appellants.

*Millard Alford, Will Steel* and *James D. Head,* for appellees.

*Wm. F. Kirsch, Maurice Cathey* and *DuVal Purkins, amici curiae.*

JOHNSON, C. J. Appellant, Texarkana-Forest Park Paving, Water, Sewer and Gas District No. 1 was organized under and by authority of act 183 of 1927, which act was amendatory of act 126 of 1923 as amended by act 645 of 1923. Subsequent to the organization of appellant district, the General Assembly passed act 63 of 1931, the effect of which was to levy a one-cent tax upon all gasoline sold in this State for the benefit of county public roads as distinguished from State roads; the act of 1931 further provided, in effect, that the State Treasurer, prior to disbursing the funds to the respective counties, as provided therein, shall deduct the amount required to pay 75 per cent. of the maturing bonds and interest of all bonds issued by road improvement districts issued since February 4, 1927. The act of 1931 expressly provides in § 6 thereof that all districts organized under act 126 of 1923 and amendments thereto shall come within its purview and application.

On October 1, 1931, pursuant to the provisions of act 63 of 1931, the State Treasurer deducted from Miller County's allotment under said act a sum sufficient to pay 75 per cent. of the maturing bonds and interest of appellant district, and subsequent thereto made similar deductions and allotments in favor of appellant district and asserted his intention of continuing said deductions and

allotments. Thereupon the State, for the use and benefit of Miller County and J. J. Sewell, as county judge of Miller County and in his own right as a citizen and tax-payer thereof, instituted this suit in the Pulaski Chancery Court against Roy V. Leonard, State Treasurer, and appellant district praying a permanent injunction against the State Treasurer restraining and enjoining him from making any deductions from Miller County's allotment under act 63 of 1931 in aid or for the benefit of appellant district. This suit progressed to trial and decree on March 23, 1934, and the court determined therein that the prayer of appellee's complaint should be granted, and this appeal is therefrom.

Act 183 of 1927, under authority of which appellant district was organized, is unconstitutional and void for the following reasons: Act 126 of 1923 as amended by act 645 of 1923 by its mandatory provisions applied to and had effect only in and to Pulaski County. Section 24 provides: ''This act shall be operative only in counties with a population exceeding seventy-five thousand inhabitants, as shown by the last Federal census.''

In virtue of the section of the act just quoted, it and the amendment thereto of 1923 applied only to Pulaski County because Pulaski County was the only county in Arkansas in 1923 which contained the requisite seventy-five thousand population. So it was from the date of the passage of act 126 of 1923 until the passage of act 183 of 1927. Section 1 of act 183 of 1927 provides:

''Section 24 of act No. 126 of the Acts of the General Assembly of the State of Arkansas of the year 1923 is hereby repealed.''

The effect of § 1 of the act 183 of 1927 was to repeal § 24, act 126 of 1923, thereby making act 126 of 1923 and the amendments thereto apply to all counties of the State.

Act 183 of 1927 contains eight sections only. Section 1 is heretofore quoted. Section 2 amends § 25 of act 126 of 1923, which has to do only with the application of the act to districts created adjacent to certain cities and towns. Section 3 amends § 4 of act 126 of 1923, which has reference to the purpose only for which the district

may be organized. Section 4 provides for the formation of districts authorized under act 126 of 1923 embracing lands in two or more counties. Section 5 provides for the annexation of territory to districts theretofore organized by authority of act 126 of 1923. Section 6 authorizes the commissioners of districts, organized under authority of act 126 of 1923, to sell and convey the improvements effected by the district under certain restrictions. Section 7 expedites litigation affecting districts organized under said acts. Section 8 is the emergency clause.

It definitely and certainly appears from a mere reading of act 183 of 1927 that no valid improvement district could be organized under its authority and mandate. Without the aid of acts 126 and 645 of 1923 the provisions of act 183 of 1927 are absolutely meaningless and void of purpose. Section 23 of article 5 of the Constitution of 1874 provides:

"No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

In *Watkins* v. *Eureka Springs,* 49 Ark. 131, 4 S. W. 384, this court decided that an act of the General Assembly which had the purpose and effect of extending to cities and towns rights and remedies which existed by law in favor of counties could not be so extended by reference to title only. We have uniformly held, following the case just cited, that when a new right is conferred or cause of action given § 23 of article 5 of the Constitution of 1874 requires the whole law governing the right and remedy to be re-enacted in order to enable the court to effect its enforcement. *Farris* v. *Wright,* 158 Ark. 519, 250 S. W. 889; *Beard* v. *Wilson,* 52 Ark. 290, 12 S. W. 567; *Common School Dist.* v. *Oak Grove Special School Dist.,* 102 Ark. 411, 144 S. W. 224; *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181; *Harrington* v. *White,* 131 Ark. 291, 199 S. W. 92; *Palmer* v. *Palmer,* 132 Ark. 609, 202 S. W. 19; *Hermitage Special School Dist.* v. *Ingalls Special School Dist.,* 133 Ark. 157, 202

S. W. 26; *Fenolio* v. *Sebastian Bridge Dist.,* 133 Ark. 380, 200 S. W. 501; *St. L.-S. F. Ry. Co.* v. *Southwestern Telegraph & Telephone Co.,* 121 Federal 276.

In *Rider* v. *State,* 132 Ark. 27, 200 S. W. 275, we had before us, in effect, the exact question here presented. There the Legislature of 1909 passed act 310 creating a stock district in the Charleston District of Franklin County. The General Assembly of 1915, by act 145, amended the former statute by adding two other townships in Franklin County to the stock district as formed by the act of 1909. This addition was effected by amending the act of 1909 as follows: ''That wherever act No. 310 of the General Assembly of 1909 now reads 'Charleston District of Franklin County,' the same shall be amended and the same is hereby amended to read: 'Charleston District of Franklin County and Barham and Wittich townships of Franklin County'.'' We there said: ''The act of 1915, under which appellant was convicted, was clearly an attempt on the part of the lawmakers to extend the provisions of another statute merely by reference to title without re-enacting and publishing the new statute at length. * * * The statute now under consideration falls clearly within the first rule stated above, for the power granted under the new statute is not declared on its face, but is given merely by reference to the title of another statute.''

The similarity of the case just cited to the one under consideration is: In the Rider case the stock district, which applied to the Charleston district only, was extended to cover two other townships in the county by amendment; in the instant case the authority to organize suburban road improvement districts, which existed only in favor of Pulaski County, was extended to the other 74 counties of the State by the simple repeal of § 24 of act 126 of 1923. There is and can be no distinguishable difference.

Act 183 of 1927 falls squarely within the condemnation and inhibition of § 23, article 5, of the Constitution of 1874 and likewise within the doctrine of the cases cited *supra,* therefore is unconstitutional and void.

It is insisted, however, that the allotments to appellant district from Miller County's allotment of the funds under act 63 of 1931 is lawful and valid and should be continued because the donation by the State is a gratuity and may be bestowed regardless of the constitutionality of the act under which it was created. This is probably true if the General Assembly has manifested such intention, but such is not the case. The primary purpose of act 63 of 1931 is to make donations to counties and aid them in their efforts to improve county roads which lie without the State highway system. This is made evident by the fact that the 75 counties of the State were made the units to which the donation was granted. Subdivision F of § 1 of said act provides, in effect, that this created fund shall be divided among the several counties of the State upon the following basis: 1. One-third on population of county. 2. One-third on car license revenue received from the county. 3. One-third on area of county.

Subdivision G of § 1 provides: "From the allotments made to each county as provided in paragraph F the State Treasurer shall deduct the amount required to pay * * * maturing bonds and interest, etc." Thus it appears from the plain language of the act that its primary purpose is to aid counties and not road improvement districts. Since it was and is the primary purpose of this act to aid counties, we are unwilling to hold that the General Assembly had the purpose and intent to take funds primarily allotted to a county and donate them to road districts which were organized under an unconstitutional act.

Moreover, the General Assembly evidently had in mind, upon the passage of act 63 of 1931, that the road improvement districts therein sought to be aided were organized and existing under valid acts and not those organized and existing under invalid laws. We are unwilling to hold that the act of 1931 would have been passed by the General Assembly regardless of the constitutionality of the act under which it was organized. In addition to what has just been said, the evidence presented upon trial of this cause warranted the chancel-

lor in finding that appellant district was not, when organized, a public enterprise but, on the contrary, a private and personal venture of those effecting the organization thereof. The power to pay gratuities to individuals is denied to the Legislature generally by constitutional mandate, and usually a gift of money to an individual would be an appropriation of public funds to private uses, which cannot be justified in law. *Mead* v. *Action,* 139 Mass. 341; *Citizen Sav. & Loan Ass'n* v. *Topeka,* 20 Wall. (U. S.) 655; *Parkersburg* v. *Brown,* 106 U. S. 487, 1 S. C. 442; *Cole* v. *La Grange,* 113 U. S. 1, 5 S. Ct. 416; Cooley, Constitutional Limitations (6th ed.) 601, 602.

For. the reason last stated, we cannot and should not presume that the Legislature would have passed act 63 of 1931 donating public funds to private uses, or to road districts organized under unconstitutional law.

Neither can we agree that the citizens of Miller County are estopped to assert their claim to the funds here in controversy. The first answer to this contention is that these funds were not created until 1929 and 1931, long after the creation of appellant district. Secondly, the citizens of Miller County had no interest in the organization of the district and could assert no objections thereto until funds belonging to Miller County were diverted to the purpose of extinguishing a debt owed primarily by appellant district. It was then and only then that the citizens of Miller County had the right to bring in question the constitutionality of the act under which appellant district was organized.

It follows from what we have said that the chancellor did not err in granting the permanent injunction against the State Treasurer, and the decree is therefore affirmed.

SMITH, McHANEY and BUTLER, JJ., dissent.

JOHNSON, C. J., (on rehearing). On motion for rehearing it has been most earnestly insisted that the original opinion is in conflict with and by implication overrules the opinion of this court in *White River Lumber Company* v. *Drainage Districts,* 141 Ark. 196, 216 S. W. 1043. The original opinion does not effect this result.

The question under consideration in the White River Lumber Company case arose under the following circumstances: act 279 of 1909 was of general application throughout the State in reference to the formation and creation of drainage districts. Act 279 of 1909 was amended by act 221 of 1911 and by act 177 of 1913. Section 7 of act 221 of 1911 expressly exempted Phillips and Crittenden counties from the provisions of act 279 of 1909 as follows:

"Provided, that this act does not apply to Phillips and Crittenden counties, and this act being necessary for the immediate preservation of public peace, health and safety shall take effect and be in force from and after its passage."

Act No. 177 of 1913 amended the Acts of 1909 and 1911, and § 20 of act 177 of 1913 expressly repeals § 7 of act 221 of 1911. In the White River Lumber Company case we said: "The act of 1911 expressly exempted Phillips and Crittenden counties from its operation, and, this exemption being found in a separate section, it left the original act of 1909 in full and unamended force as to those counties. *Rennau* v. *State*, 72 Ark. 445, 81 S. W. 605.

"The extension of the act of 1911, so as to operate in Phillips and Crittenden counties, resulted under the act of 1913, not from extension by mere reference to the title of the act of 1911, but from the express repeal of the exemption, which had the effect of making the statute altogether general in its application."

Thus it definitely appears from the opinion that we were dealing with a question very different from the one here under consideration. The gist of the opinion in the White River Lumber Company case was that since the Drainage Act of 1909 was general in its application and applied to Phillips and Crittenden counties; and since Phillips and Crittenden counties were expressly exempted from the provisions by a separate and severable section of the subsequent Drainage Act of 1911, this separate and severable exempting section might be repealed by a subsequent act of the Legislature and thereby leave the law as it stood under the Drainage Act of 1909. Here

act 126 of 1923 as amended by act 645 of 1923 were never general in their application, but on the contrary only applicable to Pulaski County, and act 183 of 1927 by repealing § 24 of act 126 of 1923 undertook to and did extend the provisions of act 126 of 1923 to the other 74 counties of the State and thereby fell within the prohibition of the rule as announced in *Rider* v. *State,* 132 Ark. 27, 200 S. W. 1002.

Act 183 of 1927 not only had the effect of repealing § 24 of act 126 of 1923 and extending the provisions thereof to the other 74 counties of the State, but it had the direct effect of amending act 126 of 1923 by bringing 74 counties of the State under its mandate. It is a rule of universal application that the Legislature cannot do indirectly that which it is prohibited from doing directly. Therefore, when it undertook to extend the provisions of act 126 of 1923 to the other 74 counties of the State by repealing § 24 of said act, it undertook to do indirectly that which it is prohibited doing directly by constitutional mandate—that is to say, amending act 126 of 1923 —and its endeavors in this behalf cannot and should not be sanctioned by the courts.

Had the Legislature of 1927 sought to amend the act of 1923 by adding the name of one or more counties, thereby making the act of 1923 applicable thereto, all would readily agree that such amendment would fall within the doctrine of the Rider case, *supra,* and would be violative of constitutional mandate. The effectuation of this identical result was accomplished by indirection and because thereof is equally obnoxious to constitutional direction.

Moreover if the White River Lumber Company case can be given the construction now asserted by appellants, it is unsound in principle and should be overruled.

The mandate of § 23 of article 5 of the Constitution of 1874 is:

''No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only: but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length.''

Four things are expressly prohibited by this constitutional mandate, unless the law is reenacted and published at length, namely: (1) no law shall be revived—(2) no law shall be amended—(3) no law shall be extended—and (4) no law shall be conferred. The second and third prohibitions that no provisions of law shall be amended or extended unless same is reenacted and published at length is clearly violated by the method pursued in the act of 1927. Act 126 of 1923 which was local and special in its application and effect to Pulaski County was amended and extended by act 183 of 1927 to the other 74 counties of the State without re-enacting and publishing the former at length. Any other interpretation of the Constitution would nullify its plain language and mandate, and we are unwilling to prostitute its wholesome protection by judicial interpretation.

In addition to what we have just said, in the White River Lumber Company case, we were dealing with the general act of 1909 which was subsequently amended in 1911 to exempt two counties from its provision which exemption was repealed by the Legislature in 1913. There we had a statute of general application in the first instance—here we have a statute local and special in its application in the first instance—there we had an exemption created by a subsequent, separate and severable enactment—here we have an exemption created at the birth of the act (and we must presume that this act would not have become a law without such exemption)—there we had a law (the act of 1909) of general application which was not extended in effect or in its application by any subsequent act—here we have a law that is amended and its provisions definitely extended by mere legislative manipulation and without reenacting and publishing at length.

Not only is act 183 of 1927 unconstitutional and void for the reasons heretofore stated, but it is likewise invalid because inhibited by amendment No. 14 to our Constitution. Amendment 14 was adopted by the people in 1926 and provides: "The General Assembly shall not pass any local or special act. This amendment shall not

prohibit the repeal of local or special acts." In *Johnson v. Simpson*, 185 Ark. 1074, 51 S. W. (2d) 233, we said:

"After the adoption of this amendment, the Legislature could not pass a valid local act. They could not amend a local act, but they were given authority in the amendment to repeal local acts.

"Act 205 of the Acts of 1927 amended § 321 of Crawford & Moses' Digest. This section of the Digest is § 1 of the local act of 1915, above mentioned. It provides for the per cent. of qualified electors necessary for the county court to order an election and a vote by the people."

Again, in *Benton v. Thompson*, 187 Ark. 208, 58 S. W. 924, we said: "This court has held, while the Legislature may repeal a local act, or may repeal a portion of it, it can not amend a local act." The situation is simply this: Every one must admit that act 126 of 1923 was local and special in its effect; every one must admit that act 183 of 1927 amended the act of 1923 so as to make it general in its application. The act of 1927 was an abortive attempt to amend a local law; the act sought to be amended remained a local act at all times unless it was converted into a general act by the passage and approval of act 183 of 1927. This act of 1927 shows upon its face that it was "an act to amend act 126 of the Acts of the General Assembly of the year 1923." After the adoption of amendment No. 14 in 1926, no local or special act could be amended. Therefore the attempt of the Legislature to do so by the act of 1927 is expressly prohibited by the 14th amendment.

For the reasons stated we adhere to the original opinion.

Smith, McHaney and Butler, JJ., dissent.