Jimmy (Red) JONES, Nancy J. HALL, Auditor and
Treasurer, respectively for the State of
Arkansas, V. T. FLETCHER, et al *v.*
Roger MEARS and Bob SCOTT

74-49

Opinion delivered June 24, 1974

[Rehearing denied July 22, 1974.]

*Smith, Williams, Friday, Eldredge & Clark,* by: *William J. Smith* and *Paul Benham III,* for appellants.

*U. A. Gentry* and *Herbert C. Rule III*, for appellees.

*James C. Cole,* and *Gore, Cladouhos & Brashares,* by: *Sarah C. Carey,* Washington, D.C., for Amicus Curiae, Citizens Conference on State Legislators.

*Henry Woods,* Attorney for Amicus Curiae Ad Hoc Committee on Legislative Reorganization.

HAROLD SHARPE, Special Justice. This is a taxpayer's action challenging the constitutionality of Act 274 of the General Assembly of 1971 and Act 2 of the General Assembly of 1973.

Act 274 authorizes the members of the General Assembly to obtain reimbursement for actual, reasonable, and necessary expenses incurred by the members in performing activities which are directly connected with and incidental to their official duties during the interim period between legislative sessions. The Act fixes an escalating maximum as follows: $150.00 per month for the 1971-72 fiscal year, $200.00 per month for the 1972-73 fiscal year, $250.00 per month for the 1973-74 fiscal year.

Act 2 of 1973, appropriates the necessary funds to defray the expenses of the Senate of the 69th General Assembly, and reimburse the Senators as provided in Act 274.

Appellee taxpayers filed this action alleging that Act 274 of 1971 and Act 2 of 1973 are void as an effort to make an allowance to the legislators, thereby increasing their salaries in violation of Amendment 48 to the Arkansas Constitution. We agree with the following facts as found by the Trial Court: Senator V. T. Fletcher received payment of the following sums under authority of Act 274 of 1971, from an appropriation made by Act 798 of 1971: $150.00 per month for the month of July, 1971 through January, 1972, $150.00 per month for the months of April through June, 1972; and $200.00 per month for the months of July through December, 1972, inclusive; a total of $2,950.00. These payments were made to Senator Fletcher as a result of his filing with the Secretary of the Senate his statements of interim expenses incurred on a monthly basis. These statements were not accom-

panied by supporting papers showing that said expenses claimed had been incurred in the transaction of official duties required by law. Senator Fletcher kept no records itemizing individual expenses for which reimbursement was claimed.

On January 10, 1973, each of the Defendant Senators received a warrant in the amount of $600.00 for postage, telephone and telegraph expense; $1200.00 for per diem expense and $1800.00 for contingency expenses, issued under authority of Act 2 of 1973. The amounts paid to each of the Defendant Senators by the warrants for contingency expense in the amount of $1800.00 and postage, telephone and telegraph expense in the amount of $600.00 were paid to them before any expenses for these purposes were incurred.

Based on these findings of fact, the Trial Court concluded that the members of the General Assembly had no official duties during the interim period between sessions, and that Act 274 and Act 798 of the 1971 Acts of the General Assembly were unconstitutional and void, restrained the Treasurer and Auditor of the State of Arkansas from paying warrants under the authority of Act 274 and granted judgment against Defendant Senators for the amounts received by them under the authority of the Act.

The points relied on for reversal by appellants include: (1) Act 274 of 1971 does not increase the salaries of members of the General Assembly and does not violate Amendment 48 to the Arkansas Constitution; (2) Act 2 of 1973 does not increase the salaries of the members of the Senate of the General Assembly and does not violate Amendment 48 to the Arkansas Constitution; (3) Judgment should not have been granted in favor of the State of Arkansas against the appellant State Senators for the sums each received under the authority of Act 274 of 1971 and Act 2 of 1973.

The constitutionality of Act 274 of 1971 and Act 2 of 1973, will be considered separately.

It is our opinion that Act 274 of 1971 is constitutional, and we so hold. In so holding, we restate our adherence to two fundamental rules of construction; first, that the

828

Constitution of this State is not a grant of enumerated powers to the legislature, not an enabling, but a restraining act, and that the legislature may rightfully exercise its powers, subject only to the limitations and restrictions of the Constitution of the United States and the State of Arkansas; second, that an act of the legislature is presumed to be constitutional and will not be held by the Court to be unconstitutional unless there is a clear incompatibility between the act and the Consitution. All doubt on the question must be resolved in favor of the Act. *Bush* v. *Martineau*, 174 Ark. 214, 295 S.W. 9 (1927), and cases therein cited.

Compensation of legislators of the General Assembly of this State was originally set by Article V., Section 16, of the Constitution of the State of Arkansas. After delineating the compensation of the legislators, that Section contained the following express prohibition:

"And they shall receive no compensation, perquisite or allowance whatever, except as herein provided."

After a series of amendments, compensation was ultimately fixed by Amendment 48 to the State Constitution. Amendment 48 contains no such express prohibition. The Amendment provides:

"Salary and per diem allowance - mileage - The members of the General Assembly shall receive as their salary, the sum of $1200.00 (twelve hundred) dollars per annum, except the Speaker of the House of Representatives, who shall receive his salary of $1350.00 (thirteen hundred and fifty dollars) per annum, with such salaries to be payable in equal monthly installments; and in addition to such salary, the members of the General Assembly shall receive twenty dollars ($20.00) per day for each day the General Assembly is in regular session, and shall receive five cents ($0.05) per mile for each mile traveled in going to and returning from the seat of government over the most direct and practicable route; and provided, further, that when said members are required to attend an extraordinary session of the General Assembly, they shall receive an addition to salary herein provided, the sum of six dollars ($6.00) per

day for each day they are required to attend, and mileage at the same rate herein provided."

Appellees cite the case of *Ashton* v. *Ferguson,* 164 Ark. 254, 261 S.W. 624 (1924), for the proposition that Act 274 is unconstitutional. We emphasize that *Ashton* v. *Ferguson,* was decided prior to the adoption of Amendment 48, and under a constitutional provision containing the prohibition above cited. Our interpretation of the absence of that prohibition in Amendment 48 is succinctly stated in *Berry* v. *Gordon,* 237 Ark. 547, 865, 376 S.W. 2d 279 (1964):

"The *Ashton* case simply ruled that members of the legislature were not entitled to allowances prohibited by the Constitutional provisions in effect at that time. Those constitutional provisions have been repealed."

Inasmuch as there is no constitutional prohibition against the reimbursement granted by Act 274, the Act does not violate the Constitution of the State of Arkansas.

We agree that the evidence elicited from Senator Fletcher at the trial level concerning the incurring of the reimbursed expenses in his capacity as a legislator during the interim period is border line, but officers of the State are cloaked with the presumption that their actions are lawful, correct, and in good faith and sincerity of purpose in the execution of their duties. *Rockfeller* v. *Hogue,* 244 Ark. 1029, 429 S.W. 2d 85 (1968). Appellees have not overcome this presumption by showing that Senator Fletcher did not actually have legitimate reimbursable expenses in excess of the amount claimed. However this Court could countenance no claim which appeared to be a sham to evade the constitutional limitation on compensation.

We also hold Act 2 of the General Assembly of 1973 constitutional as adopted. However, the application of the provision to the facts in this case does not meet with the requirement of allowing reimbursement only for expenditures actually incurred. The evidence is clear that on January 10, 1973, each of the Defendant Senators received a warrant in the amount of $600.00 for postage, telephone and telegraph

expenses; $1200.00 for per diem expense, and $1800.00 for contingency expense. The $1200.00 voucher for per diem expense was paid before earned, and the $600.00 voucher for postage, telephone and telegraph and the $1800.00 voucher for contingency expense were paid before these expenses were incurred. With respect to the $1200.00 per diem, we affirm the trial court's judgment that the payment of the per diem in advance is not a fatal defect inasmuch as each Senator did serve for the session and ultimately earned the per diem.

With respect to the $600.00 voucher for postage, telephone and telegraph, and the $1800.00 voucher for contingency expense, we hold that the advance payment of these sums is violative of the Constitution of the State of Arkansas, and affirm the judgment rendered by the trial court against Defendant Senators for these sums.

Affirmed in part and reversed in part.

FOGLEMAN, J., concurs; HOLT J., disqualified.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result and all of the majority opinion except that portion which might be taken to imply that any advance payment of allowances for postage, telephone and telegraph and for "contingency" expense is violative of the Constitution of the State of Arkansas. The majority does not specify exactly which section of the Constitution would be violated by an act authorizing these payments. This leaves me without a clear understanding of the holding, although I must infer that the section contemplated is Amendment 48.

Act 2 of 1973 appropriated moneys for certain items of expenditure for the Senate. Among these are $63,000 for contingent expenses, special travel for members and other miscellaneous expenses, and $10,500 for postage for members, and $10,500 for telephone and telegraph for members. Section 3 of the act reads as follows:

That the Secretary of the Senate of said General Assembly is hereby directed to issue vouchers evidencing all payments authorized by the General Assembly,

and when such vouchers issued covering expenditures of the Senate have been approved by the Chairman of the Efficiency Committee of the Senate, the State Auditor is directed to convert such vouchers into warrants, and the Treasurer is directed to pay the sum out of the funds herein set up.

If the majority is saying that the vouchers to the individual Senators are void, and in violation of Amendment 48, as a supplement to salary, because the allowances were not disbursed as required by Act 2, then I probably could not disagree. Proper procedures for disbursement were not followed. Vouchers are to be issued to evidence payments authorized by the General Assembly. Nowhere has the General Assembly authorized payments of lump sum allowances to Senators. Vouchers issued under Act 2 are for *expenditures* of the Senate. Nowhere has the General Assembly authorized advances in anticipation of expenditures which have not been made and may never be made.

It was admitted that warrants were received by each of the Senators who is a party to this action for $600.00 for telephone, telegraph and postage and for $1800.00 for "personal services." The item of personal services is not mentioned anywhere in Act 2, and if it were, an appropriation for that purpose would be a clear violation of Amendment 48 as a salary supplement. This is unimportant, however, because these Senators did actually claim that the disbursement was for "contingency" expenses which I take to fall under the appropriation for contingent expenses, special travel for members and other miscellaneous expenses. At any rate, I can find no legislative authority for disbursements of these amounts as it was made. For this reason alone, the judgments for their recovery must be sustained, even though it might possibly be said that, when disbursed without such authority, such payments were a salary supplement in violation of Amendment 48.

It would seem that it would not be necessary, and I do not think it is proper, to go into the constitutionality of Act 2 itself. Courts should not and do not pass upon constitutional questions unless the answers to those questions are so

necessary to a determination of the case that it cannot otherwise be decided. *Missouri Pacific Ry. Co. v. Smith,* 60 Ark. 221, 29 S.W. 752; *Porter* v. *Waterman,* 77 Ark. 383, 91 S.W. 754; *Smith* v. *Garretson,* 176 Ark. 834, 4 S.W. 2d 520; *Honea* v. *Federal Land Bank of St. Louis,* 187 Ark. 619, 61 S.W. 2d 436; *Satterfield* v. *State,* 245 Ark. 337, 432 S.W. 2d 472; *Searcy County* v. *Stephenson,* 244 Ark. 54, 424 S.W. 2d 369; *Mobley* v. *Scott, County Judge,* 236 Ark. 163, 365 S.W. 2d 122; *Rome* v. *Ahlert,* 231 Ark. 844, 332 S.W. 2d 809. We have even said that where the case can be disposed of without determining the constitutional question, it is our duty to do so (*Herman Wilson Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487); that constitutional questions are *never* decided unless necessary (*Little Rock Road Machinery Co.* v. *Jackson County,* 233 Ark. 53, 342 S.W. 2d 407); and that constitutional questions are not decided unless the case cannot be disposed of on any other ground (*Bailey* v. *State,* 229 Ark. 74, 313 S.W. 2d 388, cert. denied 358 U.S. 869, 69 S. Ct. 101, 3 L. Ed. 2d 101).

Our predominant rule was founded upon the language of Judge Cooley quoted in *Missouri Pacific Ry. Co. v. Smith,* supra. A part of that quotation follows:

> In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it and when, consequently, a decision upon such question will be unavoidable.

In *Board of Equalization* v. *Evelyn Hills Shopping Center,* 251 Ark. 1055, 476 S.W. 2d 211, we did not reach constitutional arguments there made "in accord with our long-standing rule that constitutional issues will not be determined unless their determination is essential to disposition of the case," citing *Martin* v. *State,* 79 Ark. 236, 96 S.W. 372 and *Bell* v. *Bell,* 249 Ark. 959, 462 S.W. 2d 837.

A compelling reason for abiding by our well established

rule in this case is the desirability for avoiding unnecessary confrontations between departments of government. Furthermore, we should recognize that, even though the General Assembly is the repository of all sovereign powers not reserved by the people or not constitutionally delegated to one of the other two departments, it also has the obligation to support the Arkansas Constitution. We should presume that it has and will, in the absence of convincing evidence to the contrary.

If we must treat the matter, I can only agree that allowances to members of the General Assembly in excess of their salaries has not been prohibited by our constitution since the adoption of Amendment 15 in 1928. *Berry* v. *Gordon,* 237 Ark. 547, 376 S.W. 2d 279. I further agree that Act 2 of 1973 is not unconstitutional.

I must also agree that we could not approve the act if it were clearly a sham to evade constitutional prohibitions. It is a proper exercise of the power of judicial review of statutes to strike down legislative action when it is manifestly for the purpose of evading the constitution and this court has not hesitated to do so. See *Simpson* v. *Matthews,* 184 Ark. 213, 40 S.W. 2d 991; *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.,* 224 Ark. 558, 275 S.W. 2d 455. The legislature cannot do indirectly what the constitution prohibits it from doing directly. *Cragar* v. *Thompson, 212 Ark. 178, 205 S.W. 2d 180; Texarkana - Forrest Park Dist. No. 1* v. *State,* 189 Ark. 617, 74 S.W. 2d 784. In exercising this judicial power, however, we should never assume that the legislative branch, an independent, coordinate department of government, will not uphold the constitution in the exercise of its powers. We certainly should not assume that it will attempt to evade the Arkansas Constitution. Furthermore, the courts have no power to inquire into the wisdom, advisability, expediency, or propriety of legislation not violative of the constitution. These are matters solely for consideration of the legislative department, whose responsibility to the ultimate sovereign, the people, is at least as great as that of the judicial branch. *Ward* v. *Bailey,* 198 Ark. 27, 127 S.W. 2d 272; *Albright* v. *Karston,* 206 Ark. 307, 176 S.W. 2d 421; *Reed* v. *Hundley,* 208 Ark. 924, 188 S.W. 2d 117; *Fugett* v. *State,* 208 Ark. 979, 188

S.W. 2d 641; *Cook* v. *Arkansas-Missouri Power Corp.*, 209 Ark. 750, 192 S.W. 2d 210; *Longstreth* v. *Cook*, 215 Ark. 72, 220 S.W. 2d 433; *Beaumont* v. *Faubus*, 239 Ark. 801, 394 S.W. 2d 478.