Colonel John R. Bailey, Director Arkansas State Police #1 State Police Plaza Little Rock, Arkansas 72209
Dear Colonel Bailey:
You have requested an Attorney General opinion concerning the publication of a driver's license manual. You indicate that the Arkansas State Police have traditionally provided such a manual to the public, free of charge. The manual is in high demand, and the cost of producing it on an annual basis is substantial. A publishing firm has recently proposed to publish the manual, with the understanding that advertising in the manual would be permitted.
In light of the foregoing situation, you have presented the following questions:
 (1) Can a publishing firm provide a driver's license manual to the Arkansas State Police, at no cost, with the provision that advertising will be permitted?
(2) If so, would this require a bid process to select a firm?
RESPONSE
Question 1 — Can a publishing firm provide a driver's license manual tothe Arkansas State Police, at no cost, with the provision thatadvertising will be permitted?
It is my opinion, as explained more fully below, that an arrangement of this nature could be challenged on the grounds that it violates the constitutional prohibition against illegal exactions, because it makes use of the expertise of public officials in a way that will primarily benefit a private entity (or entities).
The right of action for illegal exactions arises out of Article 16, § 13
of the Arkansas Constitution, which states:
 Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.
Ark. Const., art. 16, § 13.
The Arkansas Supreme Court has recognized that an "illegal exaction" can take two forms: (1) A misapplication of public resources; and (2) A wrongful taxation. Id. at 128. Pledger v. Featherlite Precast Corp.,308 Ark. 124, 823 S.W.2d 852, cert. denied, ___ U.S. ___, 113 S.Ct. 82,121 L.Ed.2d 46 (1992). A misapplication of public resources involves the use of public resources for a private purpose.
One of the leading cases in which the Arkansas Supreme Court addressed the issue of the unlawful use of public resources for a private purpose was Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963). In that case, a taxpayer challenged the use of tax funds for the purpose of paying retirement benefits to employees of the Arkansas Education Association, which was a private organization. The court concluded that even though these employees worked primarily in jobs that benefited the public, the use of tax funds to pay their retirement benefits did not benefit the public primarily, but rather, primarily benefited the employees privately, and was therefore unlawful. In so holding, the court gave a concise statement of the law applicable to the issue of the use of public funds for a private purpose:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624:" The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
Chandler, 236 Ark. at 258, quoting Brodhead v. City of Milwaukee,19 Wis. 624.
The court took a similar view of the use of public funds at issue inTexarkana-Forest Park Dist. No. 1 v. State, 189 Ark. 617, 74 S.W. 784
(1934). There, the legislature passed a road improvement tax, and authorized that a certain amount be deducted from that collected tax, for the purpose of paying the maturing bonds of previously organized road improvement districts. It was argued that one such road improvement district was not entitled to this deducted amount for maturing bonds, because the district had been organized under an unconstitutional act and therefore did not constitute a public entity. The court agreed and held that the unconstitutionally-organized road improvement district was, in essence, a private entity, and that to allow it to use tax funds for the payment of maturing bonds would constitute an unlawful use of public funds for a private purpose. The court said:
 [T]he evidence presented upon trial of this cause warranted the chancellor in finding that appellant district was not, when organized, a public enterprise but, on the contrary, a private and personal venture of those effecting the organization thereof. The power to pay gratuities to individuals is denied to the Legislature generally by constitutional mandate, and usually a gift of money to an individual would be an appropriation of public funds to private uses, which cannot be justified in law. Mead v. Action, 139 Mass. 341; Citizen Sav. 
Loan Ass'n v. Topeka, 20 Wall. (U.S.) 655; Parkersburg v. Brown, 106 U.S. 487, 1 S.C. 442; Cole v. La Grange, 113 U.S. 1, 5 S.Ct. 416; Cooley, Constitutional Limitations (6th ed.) 601, 602.
 For the reason last stated, we cannot and should not presume that the Legislature would have passed act 63 of 1931 donating public funds to private uses, or to road districts organized under unconstitutional law.
Texarkana-Forest Park, 189 Ark. at 623. See also Clark v. State,308 Ark. 84, 824, S.W.2d 345 (1992) (Brill, J., concurring); Brewer v.Hawkins, 241 Ark. 460, 408 S.W.2d 492 (1966); Samples v. Grady,207 Ark. 724, 182 S.W.2d 875 (1944).
A primary consideration in these "public funds" cases appears to be whether those who contributed the tax money at issue received the intended benefit therefrom, or whether, by contrast, the benefit was received by a private individual or entity.
Applying this consideration and the holdings of the above-discussed cases to the arrangement about which you have inquired, I must conclude that the arrangement runs afoul of the illegal exaction prohibition. Although the direct use of public funds is not at issue, the direct use of publicresources is. The substance of the information contained in the drivers' license manual undoubtedly is (or should be) provided by public officials who have knowledge of the subject matter. If this information is then presented to the public with advertisements for the entity who publishes the manual (or advertisements for entities who have paid the publisher), those public officials' expertise will have been used to general a benefit that will go primarily to the private entity who publishes the manual, or to the private entities who have paid the publisher for advertising space. In this way, public resources will have been diverted to private purposes.
I must point out that this issue has not been presented to a court, and that if it were, the court could reach a different conclusion as to who actually receives the primary benefit of the public resources in question in this situation. This is because the primary benefit issue is a question fact that will turn on the evidence presented.
Nevertheless, pending judicial resolution of this issue, I find it reasonable to conclude that the use of the expertise of public officials to prepare a manual that will be used to advertise for private entities constitutes an unlawful use of public resources for private purposes.
Question 2 — If so, would this require a bid process to select a firm?
Because I have opined that the arrangement you have described (i.e., an arrangement under which the publishing service is provided, with the understanding that advertising will be permitted), is not permissible, it is unnecessary for me to answer Question 2.
However, I will note that the right to publish the state's driver's license manual with advertising, could be viewed as a valuable commodity for which the state should be compensated. Thus, if the State Police should decide to charge for the privilege of publishing the manual with advertising, a bidding procedure might be appropriate. The bidding procedure that is followed in the sale of state property is governed by the rules and regulations of the Department of Finance and Administration, and is similar to the procedure that is required by state law for purchases by the state. It is my understanding that the question of whether bidding is appropriate for particular sales will be determined by the value of the item to be sold. In the event that the State Police should choose to follow such a procedure, the Department of Finance and Administration should be consulted.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh