FARRIS *v*. WRIGHT.

Opinion delivered May 7, 1923.

1. STATUTES—EXTENSION OF PRIOR STATUTE.—Under art. 5, § 23, Const., prohibiting the extension of the provisions of a law by reference to its title only, *held* when a new right is conferred or cause of action given, the provision of the Constitution quoted requires the whole law governing the remedy to be reenacted in order to enable the court to effect its enforcement; but if the statute is original in form, and by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some other existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right or discharging the burden.

2. STATUTES—REFERENCE STATUTE—EXTENSION OF PRIOR STATUTE.— Acts 1923, No. 317, entitled "An act to abolish tenancy by the curtesy," *held* void as an attempt to confer a substantive right or interest by reference merely.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Robert D. Lee,* for appellant.

It is necessary, under this act abolishing the right of curtesy, for the husband to join in her conveyance of her property acquired after the passage of this statute. This law gives the husband the same rights in the wife's property as she had in his property before its passage. *Sadler* v. *Campbell,* 150 Ark. 594. Not in conflict with § 7, art. 9, Constitution, since she acquires all property, after its passage, burdened with the husband's contingent interest, and it never becomes her sole and separate property.

*J. C. Marshall,* for appellee.

Whole act is unconstitutional. The purpose was not only to abolish estate by the curtesy but to give the husband in lieu thereof the same rights in the wife's lands that she had in his lands before its passage, and this could not be done because of § 7, art. 9, Constitution. It is also clear that the provision referred to would render nugatory any relinquishment by the husband in

the wife's lands. *Neelly* v. *Lancaster,* 47 Ark. 175. The act has no relation to personal property.

McCulloch, C. J. This case involves an attack on the constitutionality of a statute. enacted by the General Assembly at the recent session (1923), entitled, "An act to abolish tenancy by the curtesy." Section 1, which constitutes the body of the statute, reads as follows:

"The estate of curtesy is hereby abolished, and hereafter, upon the death of a married woman, her surviving husband shall have in her estate the same interest that the wife has in the estate of the husband upon his death under the laws of this State."

We deem it necessary to consider as decisive of the case the only point of attack on the validity of the statute, that it offends against section 23, article 5, of the Constitution, which reads as follows:

"No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length."

This court has often considered the application and effect of this provision of the Constitution, and in each instance has adhered to the rule that "when a new right is conferred or cause of action given, the provisions of the Constitution quoted require the whole law governing the remedy to be reenacted in order to enable the court to effect its enforcement," but that if the statute "is original in form, and by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some other existing statute for the purpose of pointing out the procedure in executing the power, enforcing the right, or discharging the burden." *Watkins* v. *Eureka Springs,* 49 Ark. 131; *Beard* v. *Wilson,* 52 Ark. 290; *Common School District* v. *Oak Grove Special School Dist.,* 102 Ark. 411; *State* v. *McKinley,* 120 Ark. 165; *Harrington* v. *White,* 131 Ark. 291;

*Rider* v. *State,* 132 Ark. 27; *Palmer* v. *Palmer,* 132 Ark. 609; *Hermitage Special School Dist.* v. *Ingalls Special School District,* 133 Ark. 157; *Fenolio* v. *Sebastian Bridge District,* 133 Ark. 380.

The United States Circuit Court of Appeals for the Eighth Circuit has followed our decisions and adopted the same rule of construction and application. In the case of *St. Louis & San Francisco Ry. Co.* v. *Southwestern Telegraph & Telephone Co.,* 121 Fed. 276, Judge SANBORN, speaking for the court, said:

"The second answer to this contention is that, while section 23, art. 5, of the Constitution of Arkansas limits legislation which grants, modifies, or destroys the rights of parties, it has no application to legislation which simply affects remedies and methods of procedure."

The line is thus sharply and definitely drawn between the character of statutes which fall within the inhibition of the Constitution and those which fall without its operation. The only remaining task is to determine within which class of statutes the one now under consideration falls. The statute plainly confers not a mere remedy or method of procedure for enforcing a right, but it undertakes to confer a substantive right or interest. The statute undertakes, in other words, to provide an interest which the surviving husband shall have in the estate of his wife upon the latter's death. This is a right or interest sought to be vested, and not a remedy or procedure to be adopted in securing a declared right. Our conclusion therefore is that the statute is in direct conflict with the language of the Constitution, and for that reason it must be declared invalid.

Decree affirmed.

SMITH, J., (dissenting). As is said in the majority opinion, section 23 of article 5 of the Constitution has been often considered by this court, but apparently its meaning had not heretofore been fully ascertained. Much aid in its construction might be derived by a consideration of its purpose and the evils in legislation

which it was intended to prohibit. A similar provision is found in the constitutions of many of the States, and its purpose has been many times explained by the courts of this and other States.

One of the earliest cases by this court construing this section is that of *Watkins* v. *Eureka Springs*, cited in the majority opinion. It was there said: "We are not, however, prepared to assert that when a new right is conferred or cause of action given, the provision of the Constitution quoted requires the whole law governing the remedy to be reenacted in order to enable the courts to effect its enforcement. * * * They (the makers of the Constitution) meant only to lay a restraint upon legislation where the bill was presented in such form that the legislator could not determine what its provisions were from an inspection of it. What is not within the mischief is not within the inhibition. Every intendment is to be indulged in favor of the prerogative of the legislative branch of the government. A doubt of its powers to legislate inures to its benefit. The language of the provision is so broad that a literal construction would hamper legislation almost to the extent of prohibiting it. This was adverted to in *Scholes* v. *State*, 47 Ark. 476, and it was there ruled that a repeal of the exception in a statute, although it practically *extended* the operation of its provisions to the class previously excepted, did not render it necessary to reenact the general provisions in order to continue them in force."

The meaning of this section of the Constitution was thoroughly considered in the case of *State* v. *McKinley*, 120 Ark. 165, and we there quoted from an opinion of the Supreme Court of Michigan, delivered by Judge Cooley in *People* v. *Mahaney*, 13 Mich. 481, in which that learned judge said: " 'This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their

effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words or to substitute one phrase for another, in an act or section which was only referred to, but not published, was well calculated to mislead the careless as to its effect, and was perhaps sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.''

In the McKinley case, *supra,* a violation of § 5433 of Kirby's Digest (§ 7615, C. & M. Digest) was alleged. This section reads in part as follows: ''* * * All elections shall be held and conducted in the manner prescribed by law for holding State and county elections, so far as the same may be applicable.''

It thus appears that, by mere reference to the general election laws, those laws were made applicable to municipal elections, and it was contended—and the trial court held—that the section quoted violated section 23 of article 5 of the Constitution, because the general election law was made applicable to municipal elections by mere reference to the general election laws. After a review of the authorities, and after quoting from Judge COOLEY, as stated, we reached the conclusion that the legislation was valid, and announced our conclusion as follows: ''From the principles above announced, it will be seen that the constitutional provision quoted above was intended to enable the meaning of statutes directly amending prior statutes to be ascertained by an examination of the new statute, without the necessity of examining the prior statutes on the subject to ascertain the effect of the amendment. As we have already seen, § 5433 of Kirby's Digest is complete in itself and does not

purport in any manner to amend or change the existing election laws. It follows that the constitutional requirement was not violated in the enactment of § 5433 of Kirby's Digest, and the court erred in sustaining the demurrer to the indictment.''

In other words, we were of opinion that the act was not within the evils intended to be guarded against, and therefore the legislation was not invalid. That act did not purport to recite any of the provisions of the general election laws. It assumed they were known, and on that assumption it was enacted that municipal elections should be held in accordance therewith *"so far as the same may be applicable."*

In contrast with this case and as illustrating the kind of legislation intended to be prohibited, the case of *Rider* v. *State,* 132 Ark. 27, may be cited. The act under review provided that, wherever a certain prior act reads, ''Charleston District of Franklin County,'' the same should be amended to read, ''Charleston District of Franklin County and Barham and Wittich Townships of Franklin County.''

That was not a mere reference statute. One could not have read it and have known what change was made in the law, and we therefore held it was within the inhibition of the Constitution, for, as was said by Judge COOLEY, it was legislation calculated to mislead the careless legislator.

The act here under review is of a class commonly designated as a reference statute. It is complete in itself, although reference to other statutes is necessary to comprehend the scope of its application. But that fact does not make it offend against the Constitution. If one will turn through a copy of the acts of the General Assembly for any session, he will find much legislation enacted in this manner; and if we should hold such legislation unconstitutional, chaos would result. To require legislation to be so complete that no reference would be necessary to any other legislation to determine the mean-

ing of the particular legislation would, as was said by Chief Justice COCKRILL in *Watkins* v. *Eureka Springs, supra,* hamper legislation almost to the extent of prohibiting it.

"The prohibition of the Constitution referred to is directed against the practice of amending or revising statutes by additions or other alterations which, without the presence of the original act, are usually unintelligible and misleading."

"There is, however, a class of statutes known as reference statutes which do not encroach upon this or any other constitutional provision. They are statutes in original form and in themselves complete, but refer to and, by reference, adopt preexisting statutes. The two statutes are separate and distinct legislative enactments, each having its appropriate sphere."

The language just quoted is from the recent case of *House* v. *Road Imp. Dist. No. 4,* 154 Ark. 218, 242 S. W. 68, and is applicable here.

The act here under review is complete in itself. One can read it and know from this reading alone what the state of the law is after its enactment. The estate of curtesy is abolished, and in lieu thereof the married man is given, *upon the death of his wife,* the same interest in her estate (which she had not disposed of in her lifetime and owned at the time of her death) which the wife would have had in the husband's estate had she survived him. Of course, we would have to look to other statutes to determine what that interest would be, but, as we have seen, there is no constitutional objection to doing this.

This legislation makes no change in the wife's interest in her husband's estate. It contains no limitation upon her control of her own estate during her lifetime, for it becomes applicable in any case only upon the death of the married woman, in which event the act gives the surviving husband the same interest in the wife's estate which she would have taken in his estate had she survived him.

The statute is original in form, and by its own language confers a new right, which is made definite and certain by a consideration of other statutes which are in nowise changed or amended by the act under review.

Mr. Justice HART and the writer therefore respectfully dissent from the conclusions announced by the majority.