Arkansas State Highway Commission *v.* Otis & Company.

Opinion delivered September 29, 1930.

*Pace & Davis* and *R. W. Robins,* for appellant.

*Robinson, House & Moses, W. H. Cooper, Owens & Ehrman, Buzbee, Pugh & Harrison, Maddox & Greer, Tom W. Campbell, Cockrill & Armistead, Garner Fraser, Horace Sloan, Rose, Hemingway, Cantrell & Loughborough, Charles D. Frierson, Coleman & Riddick, A. B. Shafer* and *Frauenthal, Sherrill & Johnson,* for appellees.

*Rice & Dickson, amici curiae.*

HART, C. J. This is an appeal by the Arkansas State Highway Commission from a judgment of the circuit court awarding a writ of mandamus to twenty-six different claimants to compel it to issue vouchers to them in payment of their respective claims against various road improvement districts in the State of Arkansas, pursuant to the provisions of act 153 passed by the Legislature of 1929 in aid of road districts in this State. Acts of 1929, vol. I, p. 785.

It is first contended that the act of 1929 just referred to in aid of road districts in this State is in conflict with article 5, § 23, of the Constitution which provides that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only. It is contended that the act violates this section of the Constitution by amending or extending the provisions of act 18 enacted by the Legislature of 1929 for the purpose of making appropriations for the operation of the Highway Department and of act 11 of the Acts of 1927 in which the State's highway policy was declared and provision made for the payment of certain outstanding road improvement distirct bonds. See Acts of 1929, vol. I, p. 24, and Acts of 1927, p. 17.

The grounds upon which the constitutionality of the act is here attacked are the same as those which were considered and determined by the court in the case of *Grable* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41. We see no good reason for reviewing the conclusions there reached and treat the matter as settled by that case. In addition, it may be said that textwriters and courts generally say that the constitutional requirement does not apply to supplemental acts not in any way modifying or altering the original act, nor to those merely adding new sections to an existing act. Cooley on Constitutional Limitations, (8th ed.) vol. I, pp. 316-317; 26 Am. & Eng. Enc. of Law (2d ed.) p. 707; 36 Cyc., p. 1061; and 25 R. C. L., § 119, pp. 874-875.

The constitutional provision applies where the act is strictly amendatory or revisionary in its character. Its

prohibition was intended to prevent the amendment or revision of an act by additions or other alterations which, without the presence of the original act, are confusing or unintelligible.

Act 153 of the Acts of 1929 under consideration is complete in itself, intelligible and original in form. It does not in any sense purport to add any additional section to the statutes referred to in it or to engraft into their provisions anything which would affect them. Their provisions remain intact, and are not in any wise affected by the act under consideration. The purposes of the present act might have been accomplished by an act strictly in form amendatory by incorporating the whole of the original acts into the present one, but such course would have been cumbersome and not more intelligible than the present act.

A full, clear and comprehensive statement of the principles of law relating to such provisions of a constitution was made in *People* v. *Banks,* 67 N. Y. 568. In an elaborate opinion prepared by Mr. Justice ALLEN, it was said:

"It is not necessary, in order to avoid a conflict with this article of the Constituton, to re-enact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution, or the mischief intended to be remedied. By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the State. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the act, but merely for the formal execution of the law. The evil in view in adopting this provision of the Constitution was the incorporating into acts of the Legislature

by reference to other statutes of clauses and provisions of which the legislators might be ignorant, and by which, affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law which would not receive the sanction of the Legislature if fully understood.''

''There is no evil of this or of any nature to be apprehended by the mere reference to other acts and statutes for the forms of process and procedure, for giving effect to a statute otherwise perfect and complete. It would be a serious evil to compel the engrafting upon and embodying in every act of the Legislature all the forms and the details of practice which may be necessarily resorted to to carry any one statute into effect, when the same proceedings are provided for by the general statutes of the State, and are applicable to hundreds of other cases, and with which the Legislators may be supposed to be reasonably familiar.''

In concluding this branch of the case, it may be said that the act of 1929 under consideration in aid of road districts provides for the payment of certain outstanding debts other than road bonds out of the appropriation which had already been made by the same Legislature for the operation of the Highway Department in all its departments, including the retirement of road district bonds and the interest assumed by the State pursuant to the provisions of the act of the Legislature of 1927 in which the State's highway policy was declared. In the Grable case, we held that the provision of the act under consideration was constitutional, and was a valid appropriation act, and was not an appropriation by reference, which is prohibited by the section of the constitution above referred to. We cited former decisions of this court to sustain our holding in the construction of acts containing similar provisions with regard to appropriations, and we now adhere to the views there expressed.

It is next contended that the claims against the various highway improvement districts involved in this ac-

tion cannot be paid by the Arkansas State Highway Commission without destroying the parity system provided for by what is commonly called the Martineau Road Law and the allotment system made thereunder by the Arkansas State Highway Commission. In the consideration of this question, we deem it necessary to set out and refer to a part of the provisions of all three of the acts above mentioned.

In § 1 of the Martineau Road Law, it was declared to be the policy of the State to take over the construction, repair, maintenance, and control of all the public roads in the State comprising the State highway as defined herein. Section 3 provides that the commission shall, as soon as possible, ascertain the amount of valid outstanding road bonds issued by the road improvement districts in this State, and for the payment of the same by the commission by the Auditor of the State issuing vouchers for the amounts due on the State highway fund. Section 4 provides for the construction and completion of the State highways and reads as follows:

"It shall be the duty of the commission to construct the roads in the State highway system which are not now constructed, the work of construction to be pushed as rapidly as funds are available for that purpose. The commission shall begin the work of construction in those counties in which the roads embraced in the State highway system have not been constructed by improvement districts, or in which only a small portion of such roads have been so constructed, and shall continue construction work in such counties until the completed roads in each county in the State have been brought to a parity, after which construction work shall be distributed throughout the counties so as to maintain the parity as far as practical."

Section 5 provides for new road construction, and § 10 provides for appropriations to pay all these matters. Acts of 1927, p. 17.

The Legislature of 1929 first passed act 18 for the purpose of making appropriations for the operation of

the highway department and for aid to county highway funds.  Acts of 1929, Vol. 1, p. 26.

Subsequently, the same Legislature passed an act in aid of the road districts in the State.  Acts of 1929, Vol. 1, p. 785.  The preamble and § 1 of the act read as follows:

"Whereas, it has been determined that there is an extensive amount of indebtedness against sundry road improvement districts in the State of Arkansas, and

"Whereas, no provision was made for the payment of these road improvement district obligations in § 3 of act No. 11 of the Acts of the Forty-sixth General Assembly, approved February 4, 1927, therefore,

"Be it enacted by the General Assembly of the State of Arkansas:

"Section 1.  That the Highway Commission shall as soon as possible ascertain the amount of any valid outstanding indebtedness incurred prior to January 1, 1927, against any road district in the State of Arkansas organized prior to the passage of act No. 11 of the Acts of the General Assembly of the State of Arkansas for the year 1927 which was approved February 4, 1927, and shall draw vouchers to be paid out of the appropriation already provided for in act No. 17 of the Forty-seventh General Assembly for the payment of road district bonds and interest obligations; such voucher shall be delivered to the person authorized to receive the same on proper satisfaction of such indebtedness, provided that such payments so made shall be charged against the allotment to the respective counties (in which the road was located) as made by the Highway Commission, and if in two or more counties it shall be prorated in accordance with the mileage of the road in each county."

The record shows that the Arkansas State Highway Commission, after the passage of the Martineau Road Law in 1927, prepared a table showing the allotments that should be made to the various counties in the State under the act.  In preparing this table, the size, population, and revenue provided for in the act for the various counties were taken into consideration.  The record also

shows that the amount of outstanding bonds under the act in some counties was greater than the amount of the allotment under the table just referred to, but these outstanding bonds were paid by the commission and the overplus charged to the county so that no more road construction should be had in that county by the commission until a sufficient amount of new road construction had been done in other counties which would equalize this with the counties where the overpayment of the bonded indebtedness according to the allotment by the highway commission had been made. In short, the overpayment of the bonded indebtedness in certain counties was treated as in the nature of an advancement to them, and the plan was to equalize the allotments of all the counties according to the table prepared by the commission, and in this way it was deemed that the parity plan referred to in § 4 of the Martineau Road Law copied above would be carried out.

On the part of appellees, it is contended that the same plan should be adopted in the payment of outstanding debts other than bonds provided for by act 153, passed by the Legislature of 1929. They point to the fact that the preamble to the act recites that there was an extensive amount of indebtedness against sundry road improvement districts in the State and that no provision had been made for the payment of these obligations in the act No. 11 passed by the Legislature of 1927. Therefore, it is insisted that, under the provisions of § 1 of this act, the Highway Commission must ascertain the amount of the outstanding indebtedness referred to in the act, and that if the indebtedness thus discharged shall overpay the allotment of the county according to the table prepared by the Highway Commission after the passage of the Act of 1927, that the overplus should be charged to the county, and no new construction work done until the overplus was absorbed by new road construction in other counties under the allotment prepared by the Highway Commission.

On the other hand, it is contended by the Highway Commission that such holding will violate the provisions of the Martineau Road Law and the parity plan adopted under it and followed by the commission in making its table of allotments to the various counties. We do not agree with the Highway Commission in its construction of the act under consideration. Parity means equality, and, as used in § 4 of the Martineau Act, means that all the counties in the State shall be brought in the same condition and treated equally with regard to aid in road building. It is a fact worthy of notice that this was the construction placed upon the act of 1927 by the Highway Commission. They first prepared the amounts which would be due the respective counties by making equal allotments to them of the road fund when their size, wealth, and the amount of revenue collected under the act should be considered. It was found that the allotments made to certain counties were not sufficient to pay the outstanding road indebtedness against them. The Highway Commission properly conceived that, under the provisions of the statute, it was mandatory upon it to pay all the outstanding bonds provided for in the statute. They did this and then properly charged the overpayment in certain counties against these counties in new road construction work.

The commission should have placed the same construction upon the present act. There is nothing whatever in it which tends to disturb the allotments made or the plan of the commission in paying the outstanding bonds as provided for in the Act of 1927. That act remains on the statute book unimpaired, and no attempt whatever is made to alter or modify it or to engraft any of the provisions of the present act into it. The present act is complete in itself and relates to a different kind of obligation of the road improvement districts, which had not been provided for by the act passed in 1927. The parity plan as adopted by the commission and carried out by it is not in any way disturbed. In fact, it will remain as the allotments due the respective counties as

prepared and adopted by the Highway Commission. It is the mandatory duty of the Highway Commission to pay the obligations provided for in the act under consideration and charge the amount thereof against the allotments to the respective counties as made by the Highway Commission, and that the overcharge shall remain against such counties until such an amount of new road construction work shall be done in other counties as will absorb it.

To illustrate, suppose the State was possessed of lands which had valuable mineral and oil rights and should receive a sum as royalties for their lease. The Legislature alone could declare the public policy of the State as to the public purpose for which these royalties should be devoted. It might pass an act to allot them to the various counties to be used in constructing and improving the public roads of the State, and, if it saw fit, might pay the outstanding road indebtedness of any of such counties and charge the overpayment of the indebtedness to the amount which they were entitled to receive under the allotment. The reasonable construction of such an act is that the annual allotments to them would not be paid to them but would be paid to the holders of the indebtedness against such counties as indicated by the Legislature; and the overpayment charged to them in the nature of an advancement.

Hence a majority of the court is of the opinion that it was obligatory upon the Highway Commission to ascertain the amount of the valid outstanding road indebtedness as provided in the act, and to pay the same out of the allotments which were due or which would have become due to the respective counties in the future and charge the amount thereof against such counties. The language of the act is mandatory in this respect and leaves no discretion on the part of the commission in paying the same after the amount of the indebtedness has been ascertained by it in conformity with the provisions of the act. In this connection, it may be stated

that there is on hand a sufficient amount of the appropriation made under the provisions of act 11 of the Acts of 1929 to pay the claimants herein. The majority holding this view of the matter is Mr. Justice HUMPHREYS, Mr. Justice MEHAFFY, Mr. Justice McHANEY and myself. Mr. Justice SMITH, Mr. Justice KIRBY and Mr. Justice BUTLER dissent on this branch of the case.

It is next contended that the circuit court erred in awarding a writ of mandamus against the Arkansas State Highway Commission and in adjudging that it should pay the amount of their claims to the respective claimants. Mandamus is an extraordinary remedy which is awarded not as a matter of right but in the exercise of a sound judicial discretion. It is resorted to for the purpose of securing judicial or *quasi*-judicial action, and not for determining in advance what that action shall be. A party to be entitled to the right must show that he has a clear, legal right to the subject-matter and that he has no other adequate remedy. *Merritt* v. *School District,* 54 Ark. 468, 16 S. W. 287; *Rolfe* v. *Spybuck Drainage Dist. No. 1,* 101 Ark. 29, 140 S. W. 988; *Patterson* v. *Collinson,* 135 Ark. 105, 204 S. W. 753; *Snapp* v. *Coffman,* 145 Ark. 1, 223 S. W. 360; *Duncan Townsite Co.* v. *Lane,* 245 U. S. 308, 38 S. Ct. 99; and *Ex parte* Wagner, 249 U. S. 465, 39 S. Ct. 317.

Section 1 of act 153 of the Acts of 1929 provides that, as soon as possible, the commission shall ascertain the amount of the valid outstanding indebtedness provided for in the act. To ascertain means to find out or to determine the amount of such indebtedness. In the discharge of the mandate of the statute, it became the duty of the commission to determine the amount and validity of the claims presented.

The facts upon which the plaintiffs ask the writ to be issued may be summarized as follows: There were twenty-six claimants, and, in all cases except two, the claimants had judgment against the road district. In each instance, the claim was presented to the Highway

Commission before the action was commenced. A certified copy of the judgment in each case was presented to the auditor of the Highway Department, and proof was offered that nothing had been paid or delivered to the satisfaction of it except the credits shown. In the two cases where judgment had not been obtained, proof was made of the amount and kind of services involved under which the claim was made. The statutory attorney of the Highway Department made an investigation of the claims, and found that they were correct as to amount and the balance due upon them. The attorney also reported this fact to the Highway Commission. The Highway Commission claims that under the construction it placed upon said act 153, it could not legally pay the claims. It was not claimed by the Highway Commission that the judgments had been procured by fraud or without notice or that there was any legal or valid reason for setting the judgments aside. Proof was introduced by one of the members of the Highway Commission to the effect that no investigation of the claims had ever been made by the Arkansas State Highway Commission itself, and that it now desired to make such investigation in order to ascertain the amount and the validity of the claims. A demurrer was first interposed and overruled to the petition of each claimant, and the cases were consolidated for the purpose of trial. In each case an answer has been filed by the Highway Commission in which it denied that it had any information as to the construction of the road improvement district or that the road constructed by it had become a part of the State Highway System. It denied that it had ascertained the amount of the indebtedness due and averred that it was of the opinion from such information as it had that the indebtedness mentioned by the claimants was invalid. It admitted that it had refused to ascertain the amount of such indebtedness, but submitted as a reason for doing so that it did not think it was a valid obligation under the terms of the act. During the progress of the trial,

an opportunity was given the commission to ascertain the amount and validity of each claim which it refused to do.

A majority of the court is of the opinion that there was an abuse of discretion on the part of the circuit court in awarding the writ of mandamus under these circumstances. It was pointed out that it would have been a vain and useless thing for the commission to have gone to the trouble and expense of investigating and ascertaining the amount of these claims when it believed that it had no authority to do so. Hence a majority of the court, consisting of Mr. Justice SMITH, Mr. Justice HUMPHREYS, Mr. Justice KIRBY and Mr. Justice BUTLER think that the court abused its discretion in awarding the writ of mandamus, and for that reason the judgment of the circuit court must be reversed and the cause remanded for further proceedings according to law.

Mr. Justice MEHAFFY, Mr. Justice McHANEY and myself are of the opinion that there was no abuse of discretion in awarding the writ. We think that it would conserve no rule of practice or principle of justice to reverse the judgment. Under the facts declared by the record, the Highway Commission became advised of the existence of the claims, and in each instance the facts as to the amount and validity of the claim are undisputed, and no suggestion is made that any other or additional proof would disclose a state of facts different from that established in the circuit court.

It results, however, from the views of the majority of the court that the circuit court erred in awarding the writ of mandamus in the consolidated case, and for that error the judgment must be reversed in each case, and the cause will be remanded for other proceedings in accordance with the principles of law announced in this opinion. It is so ordered.