ARKANSAS TAX COMMISSION v. ASHBY.

4-9232                                        233 S. W. 2d 361

Opinion delivered October 23, 1950.

760

*Lloyd A. Henry* and *Pat H. Mullis,* for appellant.

*Ernest Briner,* for appellee.

*Ike Murry,* Attorney General; *Jeff Duty,* Assistant Attorney General, and *Hendrix Rowell,* AMICUS CURIAE.

HOLT, J.   January 23, 1950, appellees, citizens and taxpayers in Benton, Arkansas, on their own behalf and all others similarly situated, brought this action alleging: "That defendant, Ross McDonald, is the county clerk of Saline County, Arkansas, and as such it is his duty to prepare the tax books for the City of Benton and Saline County, for the taxes to be collected by the tax collector for the year 1949, which will be due and collectible this year.

"That defendants, W. R. Waters, V. E. Morden and N. A. Martin, compose the Tax Equalization Board of Saline County, Arkansas, for the tax assessments to be equalized and assessed for the year 1950 to be due and collectible in the year 1951.

"That defendants, Saline County Equalization Board has been directed (by the Arkansas Tax Commission) to reconvene and be in session at the Courthouse, Benton, Arkansas, from January 23 to January 31, (1950) inclusive, for the purpose of hearing protests and making adjustments in the assessed valuations as reassessed by the Board of Re-assessment for Saline County.

"That the re-assessment of real property made by said re-assessment board for Saline County, is made without any authority of law and without legal right to make such re-assessment, and that the time for making such assessment has expired, having heretofore been assessed and equalized by the County Equalization Board when in proper session for the year 1949 for the taxes which will be due and payable this year on such property in the City of Benton, Arkansas.

"That the said county equalization board is now without any legal authority to change any of said assessments as made by the former equalization board for the taxes for the year 1949 which will be due in the year 1950, and defendant county clerk has no legal right to enter any re-assessment made by such board, and any re-assessment now made by such board or any other board is unlawful and without authority of law.

"That any such re-assessment would be taking property without due process of law and without proper notice."

They prayed for injunctive relief against all defendants.

Appellant, Arkansas Tax Commission, in a petition to be made a necessary party (which the court granted) alleged: "That the Arkansas Tax Commission is an agency of the Arkansas State Government, and as such has certain statutory duties and powers.

"That said Arkansas Tax Commission, acting within its authorized power, ordered a re-assessment of all real property in Saline County, said order being issued on October 31, 1949.

"That the Arkansas Tax Commission, acting under authority of § 84-464 and Sub-Section (s) of § 84-103, Arkansas Statutes, 1947, issued an order on January 20, 1950, to the Saline County Clerk and to the members of the Saline County Equalization Board to convene at the Saline County Courthouse at its regular place of meeting in Saline County, Arkansas, on Monday, January 23,

1950, and continue in session from day to day to and including January 31, 1950, for the purpose of hearing appeals from the action of the Re-assessing Board, and to make only such adjustments as are necessary to bring about an equalization of urban real property assessments on a basis of twenty (20%) per centum of the true and actual value.'' In a separate answer, the Tax Commission denied every material allegation in appellees' complaint.

Upon a hearing, based upon the pleadings and exhibits, the trial court granted the injunctive relief prayed without giving any specific reason.

This appeal followed.

Under Art. 7, § 28 of the Arkansas Constitution, County Courts were given exclusive, original jurisdiction in all matters relating to county taxes.

Art. 16, § 5, provides that ''all property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State,'' and Art. 7, § 46 of the Constitution provides that the qualified electors of each county in the State shall elect one assessor ''with such duties as are now or may be prescribed by law.''

The Legislature, in order to bring about equitable assessments, constituted and provided Boards of Equalization to operate in the various counties (§ 84-701, Ark. Stats. 1947), and as a further aid in accomplishing equal assessments, our lawmakers enacted Act 129 of 1927, which created for a period of 32 years, a Commission to be known as the Arkansas Tax Commission. This act clothed the Tax Commission with certain powers. Section 12, sub-section (a) provides: ''To have and exercise general and complete supervision and control over the valuation, assessment and equalization of all property, privileges and franchises; the collection of taxes and enforcement of the tax laws of the State, and over the several county assessors, county boards of review and equalization, tax collectors and other officers charged with

the assessment or equalization of property or the collection of taxes throughout the State, to the end that all assessments on property, privileges and franchises in this State shall be made in relative proportion to the just and true value thereof, in substantial compliance with law.

"(p) To order in any year a re-assessment of all real and personal property or real or personal property, or any class of personal property in any county, or in any district or subdivision thereof, when in its judgment such re-assessment is advisable or necessary, and for that purpose to cause such re-assessment to be made by the local assessment officers, or, if in the judgment of the Commission the interest of the public will be advanced thereby, to cause such re-assessment to be made by a person or persons to be recommended by the County Judge and appointed by the Commission for that purpose, and in either case to cause such re-assessment to be substituted for the original assessment. Any change in assessed value for State and County purposes shall not affect the assessment of benefits, made for any public improvement.

"(s) To require any county board of equalization, at any time after its adjournment, to reconvene and to make such orders as the Commission shall determine are just and necessary, and to direct and order such county boards of equalization to raise or lower the valuation of the property, real or personal, in any township, district or city, and to raise or lower the valuation of the property of any person, company, or corporation; and to order and direct any county board of equalization to raise or lower the valuation of any class or classes of property; and generally to do and perform any act or to make any order or direction to any county board of equalization or any local assessor as to the valuation of any property or any class of property in any township, district, city or county which, in the judgment of the Commission, may seem just and necessary, to the end that all property shall be valued and assessed in the same manner and upon the same basis as any and all other

taxable property, real or personal, wherever situated throughout the State."

Section 29: "* * * Any such re-assessment shall, when completed, be treated exactly as an original assessment and be subject to equalization by the county board and to such appeals from the action of any officer having to do with said assessment as are now provided by law in the case of original assessments."

Section 8 of Act 191 of 1949 provides for the right of appeal from the Commission's actions to the Circuit Court.

Section 31 of Act 129 of 1927 constituted the State Tax Commission a State Equalization Board and provided the yardstick to be used by the Board in the equalization of the assessment. We observe, therefore, that Act 129 gave to the State Tax Commission certain duties and powers as (1) a tax assessing body and (2) as a State Equalization Board.

As a tax commission, the Arkansas Tax Commission was given general and complete supervision and control over the valuation assessment and equalization of all property, privileges and franchises, the collection of taxes and enforcement of the tax laws of the State and supervision over the County Assessors. It was given original and exclusive power over the assessment of both real and personal property, all pipe lines, railroads and other utilities.

Act 12 of 1933 abolished the office of Arkansas Tax Commission and transferred all duties and powers to the Arkansas Corporation Commission. Thereafter, by Act 40 of 1945, all duties of the Arkansas Corporation Commission were transferred to the Public Service Commission and in 1949, by Act 191, the Legislature recreated the Arkansas Tax Commission, vesting in it all taxing powers imposed upon the Arkansas Public Service Commission. In effect, therefore, the Arkansas Tax Commission of 1949 is the Arkansas Tax Commission as created by Act 129 of 1927.

On October 10, 1949, the present Arkansas Tax Commission, appellant here, ordered a hearing for all property owners in Saline County to be held October 28th, and on October 31st thereafter, ordered a re-assessment of all real property in Saline County and appointed Assessors. December 20, 1949, the Tax Commission cancelled so much of its order which included rural property. January 20, 1950, after re-assessments were completed, the Commission ordered the Saline County Equalization Board to reconvene on January 21, 1950, to hear appeals and make adjustments on a basis of not less than twenty per cent of the true value of the assessed property. January 23, 1950, the present action was begun resulting, as indicated, in the granting of injunctive relief.

There are two primary questions presented: (1) Whether Acts 129 and 191 are valid, constitutional legislation. (2) Whether the mechanics pursued and acts performed by the Arkansas Tax Commission, in the instant case, were in accordance with the provisions of Act 129 as re-enacted by Act 191 (by reference) and within the time limit within which the Tax Commission was required to act.

—(1)—

As to the first question. We hold that Acts 129 and 191 are constitutional and valid legislative enactments.

This court in *State* v. *Little,* 94 Ark. 217, 126 S. W. 713, said: "Our Constitution, art. 16, § 5, provides that 'all property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State.' Hence, it will be seen that the taxing power is a legislative function, and that, subject to constitutional restrictions, the action of the Legislature is supreme," and in *Clay County* v. *Brown Lumber Company,* 90 Ark. 413, 119 S. W. 251, in an opinion by Judge FRAUENTHAL, it was said:

"The Legislature has plenary power to prescribe the manner in which property shall be assessed and its valua-

tion fixed for the purposes of taxation. Article 16, § 5, of the Constitution of 1874 provides: 'All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State.'

"It is common knowledge that one of the most difficult and perplexing undertakings of government is to fix an equal and uniform valuation on property throughout the State. Intelligent men differ as to the value of the most common objects before them; and the most that can be expected from legislation is an approximation to this end of equality, uniformity and fairness of valuation. The jurisdiction to fix this valuation is by legislation ordinarily placed with some officer or board; and boards or courts of revision are sometimes established. But the entire proceedings are statutory, and the statutory remedies provided to a party aggrieved by an overvaluation made within the jurisdiction of the particular officer or board must be pursued. * * *

"When legislation, in accomplishing the necessities of government, makes provision that certain officers or boards shall fix the assessment of property, it does not violate the right of due process of law."

This court in *Hutton, Collector*, v. *King*, 134 Ark. 463, 205 S. W. 296, wherein it was contended that under our scheme for assessment of taxes under Art. 7, § 46, and Art. 16, § 5, of the Constitution, the Tax Assessor was the sole, primary valuer, this court denied this contention and said: "Those two provisions must, of course, be read in harmony so as to give effect to each, and when so read they mean that there shall be a tax assessor elected with duties which the name of his office implies, but that the Legislature may prescribe those duties and direct the manner in which value of taxable property shall be ascertained. They mean, in other words, that the office of tax assessor must form a fixed part of any valuation scheme erected by the Legislature, and that the office cannot be abolished nor made a sinecure and an entirely different scheme adopted, but that the lawmakers

may, from time to time, prescribe the duties of the office and adopt such other methods as may be deemed expedient to ascertain the values of taxable property. * * *

" 'The framers of the Constitution of 1874 were therefore familiar with the practice of correcting and revising the assessment of county assessors, whether the office was created by the Legislature or the Constitution; but they have nowhere made their returns conclusive or prohibited the creation of boards to revise and equalize them.' Further along in the opinion this statement is found: 'As one of the necessary steps toward ascertaining values for taxation, local assessors elected for the purpose must make, or be afforded the opportunity to make, the primary assessment. But this valuation need not be final. On the contrary, it becomes the duty of the Legislature to afford the means of making this approximate estimate of values conform as nearly as practicable to the constitutional design of equality and uniformity.' "

It appears certain that the Arkansas Tax Commission which was created by Act 191 of 1949 must look to said Act 129 of 1927 for the method or mechanics of its procedure. The contention is made, however, that Act 191 is invalid for the reason that it attempts to incorporate portions of other acts by reference to title only and therefore offends Art. 5, § 23 of the Constitution, which, in effect, provides that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only. The answer to this contention is that, as we construe Act 191, it is a reference statute which is original, complete and intelligible in itself and therefore does not offend against the Constitution.

In *Arkansas State Highway Commission* v. *Otis & Company,* 182 Ark. 242, 31 S. W. 2d 427, this court, in construing Art. 5, § 23, of the Constitution, said: "In addition, it may be said that textwriters and courts generally say that the constitutional requirement does not apply to supplemental acts not in any way modifying or

altering the original act, nor to those merely adding new sections to an existing act. * * *

" 'It is not necessary, in order to avoid a conflict with this article of the Constitution, to reënact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution or the mischief intended to be remedied. By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the State. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the act, but merely for the formal execution of the law. The evil in view in adopting this provision of the Constitution was the incorporating into acts of the Legislature by reference to other statutes of clauses and provisions of which the legislators might be ignorant, and by which, affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law which would not receive the sanction of the Legislature if fully understood.'

" 'There is no evil of this or of any nature to be apprehended by the mere reference to other acts and statutes for the forms of process and procedure, for giving effect to a statute otherwise perfect and complete. It would be a serious evil to compel the engrafting upon and embodying in every act of the Legislature all the forms and the details of practice which may be necessarily resorted to to carry any one statute into effect, when the same proceedings are provided for by the general statutes of the State, and are applicable to hundreds of other cases, and with which the legislators may be supposed to be reasonably familiar.' "

—(2)—

As to the second question whether the Tax Commission exercised its powers within the time contemplated by Acts 129 and 191, above, we hold, on the record presented, that it did not, and therefore, the present case must be affirmed for this reason alone.

The constitutional officer in the beginning of the taxing process is the County Assessor. It is his duty to assess real property annually between the first Monday of January and the 3rd Monday in August, each year (Ark. Stats. 1947, §§ 84-414—84-416). Thereafter, he is required (§ 84-447) to file report of his assessment with the County Clerk on or before the third Monday of August, and in addition, he is required to make report to the Arkansas Tax Commission of the total assessment of the county, and the County Clerk shall immediately lay this report of assessment before the County Equalization Board (§ 84-707). All property shall be assessed according to its value on January 1st of each year. (§ 84-426).

The State Tax Commission may at any time between January 1st and the third Monday in August, in conjunction with the County Assessor, or on its own motion, re-assess all property or correct assessments.

The Tax Commission is required to assess all utilities, etc., in addition to re-assessment. List of utility property shall be delivered to the Tax Commission on or before March 1st (§ 84-601).

The Legislature of 1929 created a County Equalization Board (§ 84-701), which is required to meet annually on the third Monday of August of each year (§ 84-705) and equalize the individual assessments. For this purpose, the Board meets on the third Monday in August and "if necessary up to the third Monday in September and not thereafter, exercise its functions as a Board to equalize the assessed values of such property as has been assessed by the assessor for the then current year, etc." (§ 84-706). By this section it is provided that the County Equalization Board may not meet after

the third Monday in September for the purpose of equalizing the assessed values of property assessed by the assessor.

Anyone appealing from the orders of the County Equalization Board shall file his appeal with the County Court on or before the second Monday of October "and shall have preference over all matters in said court and shall be heard and order made on or before the first Monday of November." (§ 84-708).

The County Clerk then enters upon the assessment record the adjusted or equalized assessment value of the property as found and fixed by the County Equalization Board unless further adjustments are ordered by the County Court on appeal or by the State Equalization Board (§ 84-712). On or before the second Monday of November, the County Clerk must file, unless otherwise ordered by the Equalization Board (§ 84-713), with the State Equalization Board, a final abstract of the tax books showing "by total of items and value the total assessment of his county after all adjustments."

The Arkansas Tax Commission, as such, convenes the first Monday of March in each year, § 16, Act 129, and is in continuous session thereafter except when meeting as a State Board of Equalization, § 7, Act 129. Under its powers, the Commission has authority to act as an assessing body in conjunction with the County Assessor and the County Equalization Board and may act in assessing or re-assessing from the opening of the Assessor's books in January of each year until the books are delivered to the County Equalization Board in August of each year. The assessment made by the Commission is treated as an original assessment and subject to equalization by the County Equalization Board and to appeal as in original assessments.

The Commission, acting as a State Equalization Board, is required, under §§ 84-714 and 84-716, to complete its work and certify its records to the County Clerk in each year on or before the third Monday of November of each year.

As we construe Act 129, the entire scheme of taxation for the current year is completed by the time the County Equalization Board adjourns and within time for appeal to the County Court. The intent was that the appeal would be disposed of in time for the Quorum Court for the current year to levy taxes.

As above noted, § 33 of Act 129 requires copy of the complete record of the Arkansas Tax Commission, acting as an Equalization Board, to be filed with the County Clerk on or before the third Monday of November, in each county in which the assessed valuation of property has been, by the Board, ordered increased or decreased, the date on which the various Quorum Courts meet (§ 17-401) thus affording the Quorum Court a yardstick upon which to levy taxes for the current year.

Obviously, in the present case, the Arkansas Tax Commission, acting as such and as a Board of Equalization, in 1949, did not complete its work by the third Monday in November, 1949, as we hold it was required to do under Act 129.

In conclusion, we hold that Acts 129 and 191 are constitutional and valid enactments, but since, as indicated, the Arkansas Tax Commission failed to complete its work by the third Monday in November of 1949, for this reason only, the case must be, and is affirmed.

The Chief Justice and LEFLAR, J., concur in part and dissent in part.

Justices McFADDIN and GEORGE ROSE SMITH concur.

GRIFFIN SMITH, Chief Justice (with whom Mr. Justice LEFLAR agrees), concurring in part and dissenting in part. The majority's holding that statutes creating the Tax Commission are not constitutionally objectionable or functionally defective in their entirety finds support in numerous opinions of this Court; but Mr. Justice LEFLAR and I veer away from the present construction dealing with the *time* within which the Commission was compelled to function.

The majority's analysis of applicable legislation imputes a meaning imperatively requiring the Commis-

sion to attain an expressed purpose under an exclusive procedural pattern that in practical application defeats the design to reassess; but it is now said that the procedure is so intricately intertwined with the statutory purpose that we should say the *means* are mandatory, yet the law—valid though it be—must for all practical purposes fall with the means.

From the standpoint of Courts there is always the presumption that legislative bodies were concerned with the general purpose of a statute and that methods of achieving expressed purposes are incidental. Therefore, where particular administrative steps were not of the essence, nor harmful within themselves, then the fact that a pattern phrased by the General Assembly has not been minutely followed will not be permitted to defeat the law.

The prevailing opinion makes the statute valid but without meaning—a result not contemplated by its framers and those who enacted it. A better construction would be that when the legislature directed the Commission to reassess local properties, a reasonable time was contemplated within which the work might be done. The requirement that as an *Equalization Board* it must complete the work by November 15th does not mean that reassessments would likewise be finished by that time; nor is there any language of a mandatory nature directing completion of reassessments by November 15th.

ED. F. McFADDIN, Justice (concurring). I concur in the result reached by the majority in this case, because I think the decree of the Chancery Court was correct in granting the appellees the relief that they sought. But I reach this conclusion because (a) the powers sought to be exercised by the Arkansas Tax Commission in this case arise only from Section 2 of Act 191 of 1949; and (b) I think Section 2 of Act 191 of 1949 is void as violating Art. V, § 23 of the Constitution of Arkansas, which reads:

"No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, ex-

tended or conferred shall be reënacted and published at length."[1]

Said § 2 of Act 191 of 1949, here involved, reads:

"All powers and duties with respect to the assessment, equalization, extension, and collection of taxes Ad Valorem, and the administration of the corporation franchise or privilege tax, now vested in and imposed upon the Arkansas Public Service Commission under authority of Act 12 of the 1933 General Assembly, as amended or supplemented by Act 247 of the 1937 General Assembly, as amended by Acts Nos. 155 and 206 of the 1939 General Assembly; Acts Nos. 38 and 119 of the 1939 General Assembly; and Acts Nos. 40 and 289 of the 1945 General Assembly be, and the same are hereby, transferred to, vested in, and imposed upon the Arkansas Tax Commission, as herein created."

This Section is the only authority for the powers sought to be exercised in this case by the recreated Arkansas Tax Commission. No specific duties are conferred upon the Commission by this Section. It did not even attempt to transfer to the newly created Commission *all* of the powers possessed by the Arkansas Public Service Commission. It only attempted to confer on the new Commission such duties and powers as the Arkansas Public Service Commission had with respect to "the assessment, equalization, extension, and collection of taxes *Ad Valorem,* and the administration of the corporation, franchise or privilege tax." It will be noted that such duties, so referred to, are scattered through various and sundry Acts of different sessions of the Legislature, beginning with Act 129 of 1927 which is an Act not even mentioned in § 2 of Act 191 of 1949. I submit that there is no way in which any member of the Legislature could

[1] The foregoing provision of our Constitution was probably taken from Article V, Section 23 of the Constitution of 1868, except that that provision in that Constitution was worded:

"No law shall be *revised,* altered or amended by reference to its title only, but the act revised and the section or sections of the act as altered or amended shall be enacted and published at length."

It is well to note that in the Constitution of 1868 the inhibition was against the law being *"revised",* whereas in the present Constitution it is against a law being *revived,* as well as against the provisions thereof being *"extended"* or *"conferred."*

have realized the full purport of § 2 of said Act 191 without making an extensive study and analysis of the various and sundry Acts not before him in any single digest.[2] It is clear to me that § 2 of Act 191 of 1949 was an attempt to *revive* the Arkansas Tax Commission and to *confer* powers on that body and to *extend* previous laws, and all by reference only to the title of certain Acts.

The majority opinion in the case at bar cites and quotes from *Arkansas State Highway Commission* v. *Otis & Company,* 182 Ark. 242, 31 S. W. 2d 427, as authority for the majority holding that § 2 of Act 191 of 1949 does not violate Art. V, § 23 of the Constitution. But the legislative enactment involved in the cited case is vastly different from the legislative enactment involved in the case at bar. In *Arkansas Highway Commission* v. *Otis & Company,* the challenged Act read:

"Section 1. That the Highway Commission shall as soon as possible ascertain the amount of any valid outstanding indebtedness incurred prior to January 1st, 1927, against any road district in the State of Arkansas organized prior to the passage of Act No. 11 of the Acts of the General Assembly of the State of Arkansas for the year 1927 which was approved February 4, 1927, and shall draw vouchers to be paid out of the appropriation already provided for in Act No. 18 of the Forty-Seventh General Assembly for the payment of road district bonds and interest obligations; . . ."

Of course that enactment was complete in itself because it directed the Highway Commission (already pos-

---

[2] Section 2 of Act 191 of 1949 is an attempt to revive the Arkansas Tax Commission and to confer on it—by reference to title only —the powers formerly held by the original Arkansas Tax Commission, created by Act 129 of 1927, which Tax Commission was superceded by the Arkansas Corporation Commission in 1933, which in turn was superceded by the Arkansas Public Service Commission in 1945. There is thus an effort to *revive* and *confer* that *extends* over to the third degree—that is, from the original Arkansas Tax Commission through the Arkansas Corporation Commission, and through the Arkansas Public Service Commission. In these acts of transmission, the duties of the Commission were at no time specifically re-enacted; and then comes Section 2 of Act 191 of 1949, which attempts to confer powers on the re-created Arkansas Tax Commission. The opinion of the majority in the case at bar demonstrates that in order to find out what powers the present Tax Commission has, it is necessary to go back to Act 129 of 1927, which is not even one of the Acts mentioned in Section 2 of Act 191 of 1949 now under attack.

sessed of powers under other Acts) to determine the amount of indebtedness incurred by any road district prior to a certain date, and to pay such indebtedness out of a particular fund. So, all the language in the present opinion quoted from the cited case is language that merely bears on the *"referring"* to some previous enactment *for procedure* and not for *power* or *authority.* In the case at bar, however, the situation is vastly different. Here the newly recreated Arkansas Tax Commission has no *powers* except those *revived, extended* and *conferred* by § 2 of the Act 191 of 1949; and all such powers are *revived, extended* and *conferred* by reference merely to the *title of the Acts.* Such is clearly contrary to the Constitution. In every one of the so-called "reference statutes," to which my attention has been called, the same thing is true as existed in the cited case of *Arkansas State Highway Commission* v. *Otis & Company, supra;* and none of these cases is like the case at bar.

In *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181, Mr. Justice HART stated the line of demarcation between the so-called "reference statutes" and an Act attempting to *revive, extend* and *confer* powers. Here is his language:

"Where the new act is not complete but refers to a prior statute which is changed so that the legislative intent on the subject can only be ascertained by reading both statutes, uncertainty and confusion will exist; and this constitutes the vice sought to be prohibited by this clause of the Constitution."

I insist that § 2 of said Act 191 shows on its face that it contains the vice sought to be prohibited by this clause of the Constitution.

Likewise, in *Harrington* v. *White,* 131 Ark. 291, 199 S. W. 92, Chief Justice McCulloch said:

"We have steadily adhered to the rule that where a statute 'by its own language grants some power, confers some right or creates some burden or obligation, it is not in conflict with the Constitution, although it may refer to some existing statute for the purpose of pointing out

the *procedure* in executing the power, enforcing the right, or discharging the burden.' " (Italics are our own.)

It will be observed that Chief Justice McCulloch said that the statute could refer to an existing statute *for procedure*. He did not say that the new enactment could refer to another statute for the creation of the *power* itself. Yet that is exactly what § 2 of Act 191 of 1949 attempts to accomplish—*i. e.*, refer to another statute for the *extending* and *conferring* of power.

We have some cases in Arkansas in which Art. V, § 23 has been applied. In *Watkins* v. *Eureka Springs*, 49 Ark. 131, 4 S. W. 384, a legislative enactment of 1875 attempted to allow municipalities to call in and cancel outstanding warrants. Section 4 of that Act read: . . . "that the law now in force governing in cases where counties are authorized to call in their floating indebtedness shall apply and govern in proceedings had by counties, cities or incorporated towns." The said § 4 was attacked as violating Art. V, § 23 of the Constitution. This Court, speaking through Chief Justice Cockrill, held that § 4 violated the Constitution. Here is the language:

"But can the operation of the provision be *extended* or the power given by it *conferred* upon cities, by a general reference to the former law? We apprehend that it was just this sort of blind legislation the Constitution intends to prohibit when it says the provisions of a law shall not be 'extended or conferred' without 'reënacting' the part 'extended or conferred.' It may be that no legislator was misled by this act or failed to perceive all that it was desired it should accomplish. Of that we have no means of judging. It is sufficient that the Constitution renders such an effort at legislation unavailing. It does not permit the intelligent duty of legislation to be performed like the devotions of the Christian who was content to point to the lids of a sealed book as containing his prayers and expressing his sentiments."

I submit that § 2 of Act 191 of 1949 attempts to give to the newly recreated Arkansas Tax Commission the *powers* formerly held by another body, and is thereby attempbting to *extend* and *confer* powers just as was held unconstitutional in *Watkins* v. *Eureka Springs, supra,* which is a landmark case and has been cited by this Court in a score of subsequent cases.

Another case to the same effect is *Beard* v. *Wilson,* 52 Ark. 290, 12 S. W. 567. The Legislature of 1875 passed an Act, declaring that certain sections of Gantt's Digest providing for the redemption of land sold under execution should apply likewise to all sales made under decrees in Chancery. This Court held that such Act violated Art. V, § 23 of the Constitution of Arkansas, saying:

"It would be difficult to imagine a plainer violation of the Constitutional provision."

Likewise, in *Farris* v. *Wright,* 158 Ark. 519, 250 S. W. 889, the Legislature of 1923 attempted to abolish tenancy by the curtesy and give the surviving husband the same interest in his wife's estate that the law gave the surviving wife in the husband's estate. This Court held that the 1923 Act was void, as violating Art. V, § 23 of the Constitution.

Again, in *Texarkana-Forest Park District* v. *State,* 189 Ark. 617, 74 S. W. 2d 784, the Legislature had passed Act 183 of 1927, attempting to extend Acts 126 and 645 of 1923, by reference to title only. The Court held:

". . . It definitely and certainly appears from a mere reading of Act 183 of 1927 that no valid improvement district could be organized under its authority and mandate. Without the aid of Acts 126 and 645 of 1923 the provisions of Act 183 of 1927 are absolutely meaningless and void of purpose. . . ."

The Court held the Act 183 of 1927 to be void, in violation of Art. V, § 23 of the Constitution, saying:

"In *Watkins* v. *Eureka Springs,* 49 Ark. 131, 4 S. W. 384, this court decided that an act of the General Assembly which had the purpose and effect of extending to

cities and towns rights and remedies which existed by law in favor of counties could not be so extended by reference to title only. We have uniformly held, following the case just cited, that when a new right is conferred or cause of action given, § 23 of Art. 5 of the Constitution of 1874 requires the whole law governing the right and remedy to be reënacted in order to enable the court to effect its enforcement. *Farris* v. *Wright,* 158 Ark. 519, 250 S. W. 889; *Beard* v. *Wilson,* 52 Ark. 290, 12 S. W. 567; *Common School Dist.* v. *Oak Grove Special School Dist.,* 102 Ark. 411, 144 S. W. 224; *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181; *Harrington* v. *White,* 131 Ark. 291, 199 S. W. 92; *Palmer* v. *Palmer,* 132 Ark. 609, 202 S. W. 19; *Hermitage Special School Dist.* v. *Ingalls Special School Dist.,* 133 Ark. 157, 202 S. W. 26; *Fenolio* v. *Sebastian Bridge Dist.,* 133 Ark. 380, 200 S. W. 501; *St. L.-S. Ry. Co.* v. *Southwestern Telegraph & Telephone Co.,* 121 Federal 276.''

Thus, in a long line of cases we have held that laws cannot be *revived,* or the provisions thereof *extended,* or *conferred* by reference to title only. Certainly § 2 of Act 191 of 1949 attempts to do the very things that the Constitutional provision prohibits; and certainly we have upheld this Constitutional provision in the cases just cited. Accordingly, I submit that § 2 of Act 191 of 1949 is null and void; and the decree of the lower court should be affirmed for that reason. It seems to me that now is a good time to return to the foundation cases on Constitutional Law and see that Constitutional rights are protected, rather than frittered away by some system of judicial refinement.

GEORGE ROSE SMITH, J., concurring. I agree that the decision of the trial court should be affirmed, but it does not seem to me that the language of the statutes supports the theory adopted in the opinion written by Justice Holt, which for convenience will be referred to as the majority opinion.

When the Tax Commission concludes that the assessment of property throughout the State is not properly equalized the Commission has a choice of two remedies.

First, it may direct a blanket percentage increase in all assessments in counties or districts where assessed values are uniformly below the State average, or it may direct a similar percentage decrease in areas having assessments that are too high. Ark. Stats. 1947, §§ 84-714—84-716. When the Commission chooses this remedy it is acting as a State Equalization Board, and by § 84-715 its authority is specifically limited to making percentage increases or decreases. Provision is made in the same section for notice to the citizens in the areas affected, and they are given an opportunity to be heard before the increase or decrease is certified to the county clerk not later than the third Monday in November. I agree with the majority that this procedure is valid and enforceable.

There may also be instances where some tracts in a particular county or district are properly assessed according to the state-wide average, but the valuation of other tracts is too high or too low. Here a blanket increase or decrease would not be appropriate. To correct such a situation the Commission is authorized to pursue its second remedy; that is, to order a complete reassessment of all property (or of designated classes of property) within the particular county or district. That is what was attempted in this case. The majority conclude that the attempt fails because the work was not completed by the third Monday in November. I agree that the attempt must fail, but in my view the reason is that the controlling statutes do not create a workable system by which the Commission can complete a reassessment by the second method of procedure.

The majority interpret § 84-464 to mean that the Commission must file its reassessment by the third Monday in August, so that a dissatisfied property owner may appeal to the county equalization board at its regular session, which begins the third Monday in August and may continue until the third Monday in September. Section 84-706. The majority accordingly hold that the Commission's action in this case came too late.

It does not seem to me that the statute is susceptible of this construction. To begin with, there is nothing in

the statute that expressly requires the Commission to file its reassessment by the third Monday in August. On the contrary, § 84-464 empowers the Commission to order a reassessment "whenever . . . it shall be made to appear . . . that the assessment of the property in any county, or district or subdivision thereof, is not in substantial compliance with law." Thus by its terms the statute permits the reassessment to be made at any time during the year.

Furthermore, if the Commission must make its reassessment by the third Monday in August, then as a practical matter this method of equalizing assessments is useless. The assessor is not required to file his original assessment until the third Monday in August. Section 84-415. That is the very day on which the majority require the Commission to complete its action. But obviously the Commission cannot even determine whether a reassessment is necessary until it has examined the assessor's work, much less perform the immense task of reassessing every tract in the county or district. It is evident that by merely withholding their assessments books until the last day the assessors throughout the State can completely prevent the exercise of the Commission's power as construed by the majority opinion.

It is for this reason that the legislature undoubtedly intended for the Commission to be able to order a reassessment at any time during the year. But in my opinion the provisions of the existing statutes are so incomplete that the legislative intention cannot be carried into effect. I shall mention only two of the defects that are fatal to the workability of the law.

First, it is a basic requirement of due process of law that one whose property is to be taxed according to its value must be afforded an opportunity to be heard on the question of valuation. *Londoner* v. *Denver*, 210 U. S. 373; *McGregor* v. *Hogan*, 263 U. S. 234. Here § 84-464 attempts to comply with the constitution by providing that the reassessment shall be treated as an original assessment and be subject to equalization by the county board and to such appeals as are allowed in the case of original

assessments. On its face this provision seems to afford due process, but in actuality it is too indefinite to be workable. What is the period allowed for an appeal to the county board of equalization from an original assessment? The statute merely states that the property owner may apply to the board not later than the third Monday in August. Section 84-708: Suppose the reassessment is filed in October; is the property owner free to appeal at any time before the following August? If so, his appeal is of no value, for in the meantime the taxes will already have been extended on the taxbooks; and the law makes no provision for protecting the landowner in this situation. .

Second, a reassessment filed during most of the months in the year will be of no practical value. In the case at bar the Commission filed its reassessment in January and ordered the county equalization board to reconvene on January 23 to hear objections to the new assessed valuations. The quorum court had already met in the preceding November, however, and its tax levies were based on assessed values that then appeared. To permit valuations to be changed on ' a wholesale scale after the meeting of the quorum court might easily disrupt county finances completely. Further, the county clerk must extend the taxes and deliver the taxbooks to the collector by the third Monday in February (§ 84-807), but how can he do so if the valuations are subject to change at the very time that he is working on the books? It does not seem to require extended argument to demonstrate that our present legislation overlooks so many contingencies that it cannot be said to outline a workable method of equalizing assessments under what I have referred to as the second method of procedure.

I think that the General Assembly, if it chooses to, may establish a system by which the Tax Commission might complete a reassessment within a limited time after the filing of the original assessment and by which the property owned might have a limited time to apply for a hearing before the equalization board or some other body. Of course the due process clause does not require a

judicial review, as long as an opportunity is given to be heard by some impartial tribunal. *Kelly* v. *Allen*, 9th Cir., 49 F. 2d 876, cert. den., 284 U. S. 642. Or the legislature might permit the Commission to act at any time during the year, if the landowner were given a clearly defined opportunity for a hearing and if the revised assessment should not be effective until the next meeting of the quorum court. I think, however, that it is readily apparent that the law now under consideration is not sufficiently complete to create an enforceable system of reassessing individual properties within a county or district. For that reason I concur in the affirmance of the decree.